*In re* LEONARD JACOB HOBACK, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* GERALDINE FOSTER, Respondent-Appellant.)

Fourth District    No. 16644

Opinion filed April 9, 1981.

James R. Covington, III, of Glenn & Logue, of Mattoon, for appellant.

Dan Arbogast, State's Attorney, of Toledo (Robert L. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John O. Cutright, of Toledo, guardian ad litem.

Mr. JUSTICE MILLS delivered the opinion of the court:

Termination of parental rights.

Off the head end, we note that parental rights are not lightly terminated. In fact, the State must show the existence of one or more of the statutory grounds by clear and convincing evidence. *In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228.

After examining the facts as presented by the parties, as well as the record and the arguments of counsel, we find that the State has failed to meet its burden.

We must reverse.

On August 26, 1980, the trial court entered an order terminating the parental rights of Geraldine Foster. The court found that: (a) she failed to

maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare; (b) she failed to make reasonable progress towards the return of the child within 12 months after an adjudication that he was a neglected minor; and (c) she failed for a period of well over 12 months to maintain reasonable contact with the child, or to plan for the child's future while the child was in the care of an authorized agency.

■■ The first statutory factor which the trial court found existed was a failure by respondent-mother to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. (Ill. Rev. Stat. 1979, ch. 40, par. 1501D(b).) Although this standard is not susceptible to a precise quantitative or qualitative analysis, the record indicates that respondent-mother visited the child six times in the 18 months the child was with the Illinois Department of Children and Family Services. David Cole, a caseworker for DCFS, and Paula Nave, a caseworker for Catholic Charities, both testified that respondent expressed her desire to have Jake returned to her. Additionally, there was evidence that she had sent cards to Jake on at least two occasions. Considering the entire record, especially the facts noted above, we find that the trial court's determination, that respondent-mother failed to show a reasonable degree of interest and concern, was against the manifest weight of the evidence. *In re Hurley* (1976), 44 Ill. App. 3d 260, 357 N.E.2d 815.

■■ The trial court further found that respondent-mother failed—for a period of 12 months—to maintain reasonable contact or to plan for the child's future, while the child was in the care of an authorized agency, which agency was attempting to encourage and strengthen the parental relationship. (Ill. Rev. Stat. 1979, ch. 40, par. 1501D(n).) Our review of the record indicates that the trial court's finding on this ground was also against the manifest weight of the evidence. *Hurley.*

In the 12-month period prior to the filing of the petition to terminate parental rights, the following contacts occurred:

| | |
|---|---|
| March 14, 1979 | Respondent has a child and requests that Jake be allowed to visit the baby. |
| March 23, 1979 | Respondent meets with Nave from Catholic Charities in an attempt to set goals and objectives to be achieved within the next six months. |
| April 12, 1979 | Respondent visits with the child. |
| May 1, 1979 | Respondent, who was living in Chicago, sends a card to Jake. |
| May 25, 1979 | Respondent requests to visit with Jake on his birthday. |
| June 18, 1979 | Respondent visits with the child. |

| | |
|---|---|
| August 29, 1979 | Respondent and John Foster meet with Nave in her office in Decatur. |
| November 15, 1979 | Respondent, replying to Nave's letter of October 2, 1979, states she was unable to visit the child because she was working and didn't have transportation to Decatur. |
| November 1979 | Respondent sends the child a Thanksgiving card. |
| January 23, 1980 | Respondent meets with Cole and Nave in Charleston but was unable to provide any reasons for her lack of visits. |
| February 1980 | Respondent sends the child a Valentine's Day card. |
| February 11, 1980 | Respondent contacts Hillard of the Catholic Charities to discuss a visit at which time she agreed, at Hillard's request, to delay a visit of the child. |
| March 14, 1980 | Supplemental petition filed requesting respondent be found an unfit person. |

We hold that the above enumerated contacts constitute *reasonable* contacts under the circumstances of this case. The record indicates that respondent made these contacts during a period of time in which she occasionally was not located in the same city where Jake was placed and while she was coping with the repeated imprisonment of her spouse.

As to the question of the failure to plan for the return of the child, the respondent places the blame for the lack of planning at the feet of DCFS while the State argues that the lack of any planning was not due to the lack of effort on the part of DCFS but was due solely to respondent's failure to acknowledge the existence of any problems which might interfere with her ability to care for or protect her child.

According to caseworker David Cole, in February of 1979 he met with respondent and set goals to be achieved in order to obtain the return of the child. These goals were that respondent would move near her imprisoned spouse, find employment, find a suitable day-care center for the remaining child in her household, and that she would work with a counselor. Cole stated that after meeting with respondent in January of 1980, he felt that no progress had been made. In March of 1979, respondent met with caseworker Nave and filled out a form regarding the goals and objectives to be achieved within the next six months. The major goal set was that respondent was interested in moving to wherever her husband would be released on a work release program, which was very

indefinite for her because she did not know where that would be. The other goals were to visit Jake once a month and to find a job in the new location.

An examination of the record clearly reveals that the goals established were both indefinite and dependent upon factors outside of respondent's control. After reviewing the record, we conclude that it can hardly be said that the State has established by clear and convincing evidence that the agency through its formulation of goals attempted to encourage and strengthen the parental relationship, or that respondent failed to plan for the child's future.

Finally, the trial court found that the respondent failed to make reasonable efforts to correct the conditions which were the basis for the removal of the child, or to make reasonable progress toward the return of the child within 12 months after an adjudication that the child was a neglected minor. Ill. Rev. Stat. 1979, ch. 40, par. 1501D(m).

As respondent notes, the goals which were purportedly set forth in February of 1979 were to move near her husband in Joliet, find employment, find suitable day care, and become involved in some counseling with her husband. Respondent argues that the record reflects that she did attempt to move where her husband was, attempted to find employment, and that she acknowledged her problem was marital discord caused by alcohol. In addition, she argues that the State failed to prove by clear and convincing evidence that she did not make some minimum, measurable or demonstrable goal for the return of the child. She attempted to move north where her husband was. She did find employment in Newton for a while, she did attempt to visit Jake, and her first concern in the earlier meetings was getting Jake back.

The initial finding that Jake was a neglected minor was entered on August 28, 1979. The petition alleged that respondent failed to show parental interest and was unable to provide a suitable home environment. It further alleged that the child was exposed to a stepfather who was injurious to his health because of strife and beatings, and that he was given marijuana.

We agree with respondent that the State has failed to meet its burden of proof.

■■ Initially, the State notes that one of the two reasons for the neglect finding was the marital discord between respondent and her spouse. While the State concedes that this condition did not exist during the time her spouse was incarcerated, it notes that respondent had observable bruises on her face and arms on the day of the fitness hearing which may have been caused by a fight between respondent and her husband in July of 1980. We find that this evidence is highly speculative and is not

sufficient to support a termination of parental rights. The State also argues that respondent's alcoholic tendencies were a reason for the neglect finding and that evidence was produced that she frequently drank in 1979. In fact, the record indicates only that Mary Hoback testified that she had seen respondent drunk three times in 1979.

Our review of the record indicates that the State has failed to prove this statutory ground by clear and convincing evidence.

In addition to the facts discussed above, our decision is further mandated by other factors present in the record. Both Cole and Nave testified that Jake was happy to see his mother. Cole stated that in his contacts he found that Jake always looked clean and in good physical health. He had no signs of malnutrition, although he did have unusually long hair. Furthermore, although the State argues that concrete goals were not established due to respondent's reluctance to admit that any problems existed, Cole testified that as early as October of 1978 respondent admitted to problems of marital discord associated with alcohol.

Again we stress that our decision today is based upon a review of the entire record. The facts set forth here are merely the highlights. While it is clear that respondent was not the most shining example of motherly excellence and that the child was being raised in less than an ideal environment, the facts in this record are insufficient to terminate respondent's parental rights.

The trial court's order terminating respondent's parental rights is hereby reversed.

Reversed.

GREEN and CRAVEN, JJ., concur.