618 N.E.2d 289 (1992)
248 Ill. App.3d 1
187 Ill.Dec. 698
In re J.F. and D.F., Minors (the People of the State of Illinois, Petitioner-Appellee,
v.
John Furlan, Respondent-Appellant).
No. 1-89-2222.
Appellate Court of Illinois, First District, Third Division.
December 9, 1992.
Rehearing Allowed May 11, 1993.
Opinion Affirmed on Rehearing July 20, 1993.
*290 Rita A. Fry, First Asst. Public Defender of Cook County, Chicago (Henry L. Hams, Asst. Public Defender, of counsel), for respondent-appellant.
Jack O'Malley, State's Atty. of Cook County, Chicago (Renee Goldfarb, Mary Brigid Kenney, Theresa Harney, Asst. State's Attys., of counsel), for petitioner-appellee.
Justice TULLY delivered the opinion of the court:
Respondent John Furlan appeals from the order of the Cook County circuit court finding him to be an unfit parent and terminating his parental rights to his two minor daughters, J.F. and D.F. We affirm for the following reasons.
On November 27, 1985, J.F. and D.F., ages three years and two years, respectively, were adjudicated wards of the court pursuant to a finding of neglect by their natural father, John Furlan. As of May 10, 1983, J.F., had been placed in the temporary custody of the Department of Children and Family Services (DCFS) and thereafter was placed in the care of her foster parents by her guardian, Gary T. Morgan. On November 9, 1987, the State filed a Petition for Appointment of a Guardian with Right to Consent to Adoption, wherein the State alleged, inter alia:
"The parents are unfit pursuant to Ill. Rev.Stat.1989, ch. 40, par. 1501-1D and Ill.Rev.Stat.1989, ch. 37, par. 705-9, in that: They have failed to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare;
They have failed to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parents within 12 months after the adjudication of neglect under Section 2-4 of the Juvenile Court Act, or after an adjudication of dependency under Section 702-5 of the Juvenile Court Act, on or about March 28, 1985, which conduct is in violation of Ill.Rev.Stat. 1989, ch. 40, 1501-1D(m) and ch. 37, par. 705-9; and
They have failed to make reasonable progress toward the return of the child to such parents within 12 months after the adjudication of neglect under Section 2-4 of the Juvenile Court Act * * *"
The petition further stated that the minor children had been in the care of the same foster parents throughout their infancy, since 1983, and the foster parents desired to adopt the children. The guardian also stated that the adoption by the foster parents would be in the children's best interests. In 1988 the natural mother, Carol Furlan, voluntarily surrendered all parental rights to the children.
At the hearing on the State's petition to terminate all parental rights, Thomas Leo, a family therapist with DCFS, testified that he began counseling sessions with John Furlan in June of 1986. John Furlan had explained that he had been to 14 different psychiatric hospitals in the course of his life and had a history of violence, having been abused by a stepfather. Although Furlan attended four parenting sessions, he was not able to focus on the topics discussed, for example, child management, and in Leo's opinion he did not successfully complete the treatment. Leo concluded that Furlan was "very disturbed" with a long history of psychiatric problems and violent behavior. Leo also testified as to Furlan's inability to properly discipline and manage his daughters and that instead of making progress toward improvement, his behavior actually regressed during counseling. Leo testified that his agency utilized family counseling, parent groups and observed visits as a means of reuniting the family. After August 1986 Furlan discontinued any regular attendance at the counseling sessions.
Rose Pinnock, a caseworker for DCFS, was assigned to the case of J.F., in March 1986. She stated that John and Carol Furlan were not attending counseling in accordance with a service plan and were not making progress toward the return of their *291 children, which was the stated goal of the service plan. One of the objectives of the plan was that the father would demonstrate appropriate concern and behavior for his children. In her evaluation, she found that John Furlan's efforts to secure stable living accommodations and to have the children returned to him were unsatisfactory, since he was "unable to stabilize his own lifestyle."
Tom Stabnicki, a child welfare specialist for DCFS, testified that he had given John Furlan four goals or objectives in order to progress toward the return of his children: suitable housing, a stable income, psychological counseling and regular visitation with the children. During supervised visits with the children, Furlan became distant and showed a lack of interest after the initial greetings. Stabnicki evaluated Furlan's progress during 1984 and 1985 to be unsatisfactory. Although Furlan showed a genuine willingness to secure housing and a stable job, there was very little change or progress in his behavior toward the children or in developing parenting skills.
John Furlan testified on his own behalf, that shortly after the birth of D.F., his wife, Carol Furlan, was hospitalized for psychiatric treatment. Upon her release, he and Carol and the children resided at a motel. In May of 1983, the police arrested Carol Furlan for abuse and neglect and took her, along with J.F. and D.F., into custody. Prior to the arrest, Carol Furlan had called the police and told them that John was going to murder her and the children. He also stated that he lived at the Hotel Lincoln where he worked. He described visits with his children when he took them to the park or to lunch. According to Furlan, the counseling sessions with Thomas Leo were not very helpful and did not offer him any advice on suitable housing or management of his children. He admitted having a long history of psychiatric problems and approximately 13 hospitalizations.
At the conclusion of all testimony, the trial court found John Furlan to be an unfit parent in that he failed to correct the conditions which were the basis for removal of the children within 12 months after adjudication, or to make reasonable progress toward the return of said children within 12 months of adjudication. (Ill.Rev.Stat.1987, ch. 40, par. 1501, subd. D(m).) As a result, Furlan's parental rights were terminated and Gary T. Morgan was appointed guardian of J.F. and D.F., with the right to consent to adoption. While this case was pending on appeal, J.F. and D.F., were adopted by their foster parents.
On appeal, Respondent contends that he was making reasonable progress toward the return of his children and; therefore, termination of his parental rights was improper. In support thereof, he cites In re Hoback (1981), 95 Ill.App.3d 169, 50 Ill.Dec. 605, 419 N.E.2d 713, wherein the appellate court held a finding of neglect to be against the manifest weight of the evidence. In Hoback, the minor child was initially removed from his parents due to lack of parental interest, an unsuitable home life, an injurious stepfather and marital discord due to the respondent-mother's alcohol dependency. After removal of the child, a DCFS caseworker set the following goals for respondent-mother: to move near her husband, find employment, obtain suitable day care and attend counseling with her husband. The record revealed that respondent-mother did move near her husband, found employment, attempted to visit her son and her primary concern was the return of her son. There was also a lack of evidence as to any continual abuse of alcohol by the respondent. In reversing, the court found that the state failed to meet its burden of proof with clear and convincing evidence sufficient to terminate the parental rights of the respondent.
In the instant case, respondent was given the following objectives: suitable housing, a stable income, psychological counseling and regular visitation with the children. Although respondent made periodic visits with his children, for a period of four months, he traveled out of state and made no attempt to contact them. Moreover, respondent made no progress in developing his ability to socialize with and manage the children during one-hour visits. At the beginning *292 of the hour, he would be cheerful and receptive but by the end of the hour he would be distant and unreceptive, as well as unwilling to initiate play with the children. As far as stability of income, the record reveals that respondent could not maintain a job for any period of time. He testified that he changed jobs more than three times in an 18-month period, and at the time of the hearing he was on probation because of a physical altercation with a co-worker. The caseworkers and counselors who worked with respondent all found that he had not successfully completed a counseling program and had not made satisfactory efforts toward the return of his children. Although respondent did eventually secure a two-bedroom apartment, this was not until 1987, more than 3 years after his children were removed from him. At the time of the hearing in 1989, respondent and his new wife were living in a one-bedroom apartment.
While parental rights and responsibilities are of great societal and human importance, a parent's rights may be involuntarily terminated in the interests of the child's welfare, if the parent is adjudicated unfit pursuant to section 1501, subd. D(m) of the Illinois Adoption Act. (Ill.Rev.Stat. 1985, ch. 40, par. 1501, subd. D(m).) A finding of unfitness must be supported by clear and convincing evidence. (In re Paul (1984), 101 Ill.2d 345, 78 Ill.Dec. 149, 461 N.E.2d 983.) On appeal, we will not reverse the finding of the trial court unless it is against the manifest weight of the evidence. In re C.P. (1989), 191 Ill.App.3d 237, 138 Ill.Dec. 437, 547 N.E.2d 604.
In this case, respondent would have us return to him his children who have lived with their foster parents since their infancy. While we recognize that parents with minimal means may only be able to make limited progress toward their children's return, we must balance this against the needs and welfare of the two minor girls in this case, who have spent the last 9 years in the care of their foster family. (See, In re R.M.B. (1986), 146 Ill.App.3d 523, 100 Ill.Dec. 183, 496 N.E.2d 1248.) Moreover, the evidence in this case is not so closely balanced such that we can conclude the decision of the trial court is against the manifest weight of the evidence. While we recognize that respondent did make some effort toward the return of his children, the overall record and the lapse of time subsequent to the adjudication, suggest that his efforts were not sufficient.
For all of the foregoing reasons, we hereby affirm the decision of the Cook County circuit court.
Affirmed.
RIZZI and CERDA, JJ., concur.