# Illinois Official Reports

## Appellate Court

---

### *In re S.H.*, 2014 IL App (3d) 140500

---

| | |
|---|---|
| Appellate Court Caption | *In re* S.H., D.H., M.H., A.H., S.W. and S.B., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Angel H., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-14-0500 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | November 12, 2014<br><br>December 4, 2014<br>December 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings seeking the termination of respondent's parental rights based primarily on the sexual abuse of respondent's daughter by respondent's paramour, the termination of respondent's parental rights to one son was vacated on the ground that the wardship case of the son had been closed previously and the son's custody had been awarded to his father, and the son had never been adjudicated abused, neglected, or dependent or made a ward of the court at the dispositional hearing in the instant case; however, the finding that respondent was unfit and that the termination of respondent's parental rights was in the best interest of her children was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 12-JA-11; the Hon. James R. Standard, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on Appeal

Louis P. Milot, of Peoria, for appellant.

John T. Pepmeyer, State's Attorney, of Galesburg (Richard Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 In December 2013, the State filed a petition to terminate the parental rights of respondent, Angel H., as to her children, S.H., D.H., M.H., A.H., S.W. and S.B. The trial court found respondent unfit pursuant to sections 1(D)(m)(i), 1(D)(m)(ii), 1(D)(m)(iii), 1(D)(g), and 1(D)(b) of the Adoption Act (750 ILCS 50/1(D) (West 2012)). Following a best interests hearing, the court terminated respondent's parental rights. Respondent appeals, arguing that the trial court (1) lacked jurisdiction to terminate her parental rights as to M.H., (2) erred in finding her unfit and (3) erred in determining that it was in the children's best interests to terminate her parental rights. We vacate the trial court's decision to terminate respondent's parental rights as to M.H. and otherwise affirm.

¶ 2                                    FACTS

¶ 3 In April 2012, the State filed a neglect petition alleging that S.H., D.H., M.H., A.H., S.W and S.B. were neglected due to an injurious environment in that, among other things, S.H. (born September 25, 2002) alleged that she was sexually abused when she was eight and nine years old by respondent's paramour, that respondent refused to believe S.H., that respondent refused to cooperate with investigators regarding the abuse allegations, that after being taken into protective custody by the Department of Children and Family Services (DCFS) three of the minors were found to have yeast infections, and that respondent is currently facing felony charges for permitting the sexual abuse of a child and endangering the life or health of a child.

¶ 4 By agreed order, the neglect case involving M.H. was closed and custody was awarded to the minor's father (Knox County case No. 12-F-55). On September 11, 2012, the trial court entered an adjudication of neglect as to the remaining five children.

¶ 5 On October 2, 2012, respondent was found dispositionally unfit. S.H., D.H., A.H., S.W. and S.B. were made wards of the court, and respondent was ordered to complete certain tasks before the children would be returned to her custody. The court ordered respondent to (1) attend individual domestic violence therapy and joint therapy for the children's victim issues, (2) establish a legal source of income and suitable housing upon her release from jail, (3) maintain participation in drug and alcohol abuse support groups, (4) establish a consistent

parent-child visitation schedule, (5) report all incidents of domestic violence and secure orders of protection if warranted, (6) discontinue relations with anyone prone to domestic violence, (7) participate in parenting classes, and (8) complete a psychological evaluation.

¶ 6 On December 6, 2013, the State filed an amended petition to terminate respondent's parental rights pursuant to "section 2-13(5)" of the Juvenile Court Act of 1987 (705 ILCS 405/2-13(5) (West 2012)). The petition alleged that respondent was unfit in that she failed to (1) make reasonable efforts to correct the conditions that were the basis for the removal of the children under section 1(D)(m)(i) of the Adoption Act (750 ILCS 50/1(D)(m)(i) (West 2012)), (2) make reasonable progress between September 11, 2012, and June 12, 2013, toward the return home of the children under section 1(D)(m)(ii) of the Adoption Act, (3) protect her children from conditions within their environment injurious to their welfare under section 1(D)(g) of the Adoption Act, and (4) maintain a reasonable degree of interest, concern or responsibility as to the minor's welfare under section 1(D)(b) of the Adoption Act. An addendum was added on March 25, 2014, alleging respondent failed to make reasonable progress between June 13, 2013, and March 13, 2014, toward the return home of the children under section 1(D)(m)(iii).

¶ 7 At the fitness hearing conducted on March 25, 2014, Frances Hawthorne, a family social worker, testified that she supervised the visits between respondent and her children. Respondent's visits were scheduled one time per week for two hours; she was offered 45 visits in 2013 and missed 14. Three of the missed visits were due to respondent's incarceration. Hawthorn testified that beginning in April of 2013, respondent began leaving the visits 30 to 60 minutes early.

¶ 8 Melody Iles-Bennett testified that she was the caseworker for the family from April 2012 to October 2013. She created a client service plan for respondent and her children that went into effect in May of 2012. Bennett stated that respondent received an unsatisfactory rating on the task of completing parenting classes because she cancelled and rescheduled numerous classes. She did not successfully complete parenting classes until the fall of 2013. Bennett testified that respondent had been aware of the task since May of 2012 and would have been able to complete the task in only two or three months if she had attended classes regularly.

¶ 9 Bennett testified that respondent completed a psychological evaluation and had stable housing but failed to complete other tasks because she refused to believe that her daughter S.H. had been sexually abused by her boyfriend, Calvin W. Respondent received an unsatisfactory rating on the task of completing individual counseling addressing her relationship with men to prevent the sexual abuse of her children. She also received an unsatisfactory rating on the goal of attending group therapy with her daughter and being supportive of the children. Respondent refused to believe S.H. when she told respondent that she was sexually abused by Calvin W. in December of 2011, and she continued to have contact with Calvin W. until she was incarcerated. Bennett stated that respondent even testified in support of Calvin W. at his criminal trial for predatory criminal sexual assault of S.H.

¶ 10 Bennett testified that respondent's visits with the children between September of 2012 and June of 2013 were also unsatisfactory. Respondent attended several scheduled visits, but she was passive in her interaction with the children. The children initiated contact with respondent rather than respondent engaging with the children. Also, respondent's visits with the two older girls were suspended because the girls were afraid of her.

¶ 11    Karen Byom testified that she has been the child advocate since October 2012. She testified that she believed it was not in S.H.'s and D.H.'s best interests to visit respondent. S.H. was afraid of respondent and believed that respondent was going to kill her. Byom stated that when respondent was arrested, respondent told S.H. that the situation was all her fault and that S.H. broke up the family. Before the children were taken into DCFS care, respondent was allowed to hug the children. S.H. told Byom that when respondent gave her a hug, she whispered into S.H.'s ear that she was going to kill S.H. The trial court found respondent unfit based on all the grounds asserted in the State's amended and supplemental petitions.

¶ 12    The best interests hearing was held on May 20, 2014. Bertha Becton testified that she has been the foster mother of S.B. and S.W. for the last two years. At the time of the hearing, S.B. was three years old and S.W. was four years old. S.B. had been with Becton since she was one, and S.W. had been with her since S.W. was two. Both children called Becton "mom" and her fiancé "dad." Becton has bonded with the children, and they have bonded with her family. Becton is meeting the children's daily and medical needs. She testified that she signed a permanency agreement stating that it is her and her fiancé's intention to adopt S.B. and S.W.

¶ 13    Michelle Roberts testified that she has been the caseworker for the family since October 2013. She submitted the best interests reports to the court and corroborated Becton's testimony that S.B. and S.W. are thriving in their foster home. Roberts recommended that respondent's parental rights to S.B. and S.W. be terminated.

¶ 14    Roberts also recommended that the respondent's parental rights to A.H., D.H and S.H. be terminated. She testified that A.H. was seven years old at the time of the hearing. He is happy in his foster home and has formed a bond with his foster parents, their two sons and the grandmother that lives in the home. The foster parents' sons are approximately 13 and 14 years old. They play with A.H. and refer to him as "brother." A.H. has his own bedroom in the foster home, and the foster family has been meeting all his needs. A.H. said that he wants to be adopted by his foster family, and the foster parents signed a permanency agreement indicating that they want to adopt him.

¶ 15    D.H. was nine years old at the time of the hearing, and she has been placed with a foster family as well. Roberts testified that D.H.'s foster parents have two biological sons, and D.H. has bonded with the entire family. She calls her foster parents "mom" and "dad." The foster parents have been meeting D.H.'s needs, and they want to adopt her. D.H. also wants to be adopted by her foster family.

¶ 16    S.H. was 11 years old when the best interests hearing was conducted. Roberts testified that S.H. has been placed in a restricted therapeutic care facility. S.H. has expressed to Roberts that she would like to be adopted by a foster family. S.H. has only bonded with her sister, D.H. Her relationship with respondent is nonexistent because they have not had any communication or visitation for two years. According to Roberts, respondent has not had any contact with S.H. because she is unable to make sound choices to provide S.H. with a safe environment.

¶ 17    Byom also testified that S.H. has an extreme fear of respondent. She stated that S.H. is afraid respondent will find her someday and kill her. S.H. told Byom that she misbehaves so that she will be placed in locked mental facilities where she feels safe from respondent and Calvin W. Based on this evidence, the trial court found that it was in the children's best interests to terminate respondent's parental rights.

¶ 18                              ANALYSIS
¶ 19                      I. Defects in Amended Petition
¶ 20         Respondent first argues that the amended petition to terminate her parental rights was facially defective because it failed to cite the appropriate section of the Juvenile Court Act of 1987[1] and failed to state that respondent could "permanently" lose her parental rights.

¶ 21         Respondent did not raise these issues at trial. Generally, pleading defects must be raised at trial so that they may be remedied. Where the respondent fails to raise them, the defects are forfeited. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). Here, respondent failed to raise the issues in the trial court. Thus, she has forfeited her claims on appeal.

¶ 22         An appellate court may address a forfeited issue under the plain error doctrine if the evidence is closely balanced or the error affects substantial rights. *Id*. While the termination of parental rights affects a fundamental liberty interest, we decline to address the issues under the circumstances of this case. There is no allegation that respondent was prejudiced by the defects. Respondent had already been informed at the dispositional hearing on the original neglect petition that she could permanently lose her parental rights if she did not cooperate with DCFS. Moreover, the State's petition sufficiently stated the specific statutory grounds for unfitness. See *In re S.L.*, 2014 IL 115424, ¶ 17. Thus, any defect in the pleading did not prejudice the respondent, nor was it reversible error.

¶ 23                      II. Jurisdiction as to M.H.
¶ 24         Respondent argues that the trial court lacked jurisdiction to terminate her parental rights as to M.H. because the wardship case involving M.H. had been closed and his father was awarded custody. The State agrees.

¶ 25         The record indicates that the wardship case as to M.H. was closed in April of 2012, a few days after the filing of the State's neglect petition and before the adjudicatory and dispositional orders were entered regarding fitness. A parent's parental rights cannot be terminated under section 2-29 of the Juvenile Court Act unless the minor is adjudicated abused, neglected or dependent and a subsequent dispositional order is entered by the court. 705 ILCS 405/2-29 (West 2012); *In re A.E.*, 368 Ill. App. 3d 1142, 1145 (2006). In this case, the trial court did not have the authority to terminate respondent's parental rights because M.H. was never adjudicated abused, neglected or dependent, or made a ward of the court at the dispositional hearing. We therefore vacate the trial court's order terminating the respondent's parental rights as to M.H.

¶ 26                          III. Fitness Finding
¶ 27         Respondent also claims that the trial court's finding that she was an unfit parent was against the manifest weight of the evidence.

¶ 28         The State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067 (2004). A reviewing court will not overturn the trial court's finding of unfitness unless it is against the manifest weight of the evidence. *Id.* The trial court's decision is given great deference due to "its superior opportunity to observe the

---

[1]The amended petition stated that it was being brought pursuant to section 2-13(5) of the Juvenile Court Act of 1987 rather than section 2-29. 705 ILCS 405/2-13(5), 2-29 (West 2012).

witnesses and evaluate their credibility." *Id*. Where multiple allegations of unfitness are made, a finding that any one allegation has been proved obviates the need to review other statutory grounds. *In re J.J.*, 307 Ill. App. 3d 71, 76 (1999).

¶ 29 Respondent asserts the trial court erred by finding her unfit on numerous grounds. We will begin by addressing whether the court erred in finding respondent failed to make reasonable progress toward the return home of the children from September 11, 2012, to June 12, 2013, pursuant to section 1(D)(m)(ii) of the Adoption Act. 750 ILCS 50/1(D)(m)(ii) (West 2012).

¶ 30 Under an objective standard, reasonable progress requires, at a minimum, the parent make measurable steps toward the goal of reunification through compliance with court directives, service plans or both. *In re J.A.*, 316 Ill. App. 3d 553, 564-65 (2000). The trial court is to consider evidence occurring only during the relevant nine-month period mandated in section 1(D)(m) in determining whether a parent has made reasonable progress toward the return of the children. *In re J.L.*, 236 Ill. 2d 329, 341 (2010). In this case, we review respondent's efforts for the nine-month period following the September 11, 2012, adjudication.

¶ 31 The primary reason the children were removed from respondent's care was due to allegations that Calvin W. sexually abused respondent's daughter, S.H. Following the September 11, 2012, adjudication, respondent failed to discontinue contact with Calvin W. The record demonstrates that between September 11, 2012 and June 12, 2013, respondent remained in contact with him and testified in support of him at his trial for sexually abusing S.H. In addition, respondent failed to complete parenting classes until after the relevant nine-month period. She also failed to consistently attend scheduled visits with the children, and in April of 2013, she began leaving those that she did attend early. Even though respondent completed her psychological evaluation and had stable housing, she failed to make reasonable progress to correct the conditions which led to the removal of the children from her custody by continuing to have a relationship with Calvin W. The trial court's finding that respondent failed to make reasonable progress between September 2012 and June 2013 was not against the manifest weight of the evidence.

¶ 32                                      IV. Best Interests Finding

¶ 33 Respondent also argues that the trial court's determination that it was in the best interests of the children to terminate her parental rights was against the manifest weight of the evidence.

¶ 34 Once the trial court determines a parent to be unfit, the next stage is to determine whether it is in the best interests of the children to terminate parental rights. *In re Jaron Z.*, 348 Ill. App. 3d 239, 261 (2004). At this stage, the court's focus shifts from the rights of the parent to the best interests of the children. 705 ILCS 405/1-3(4.05) (West 2012); *In re B.B.*, 386 Ill. App. 3d 686, 697 (2008). The trial court must consider the following factors, in the context of the child's age and developmental needs, in determining whether to terminate parental rights: (1) the physical safety and welfare of the child, including food, shelter, health, and clothing; (2) the development of the child's identity; (3) the child's familial, cultural and religious background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationship with parent figures, siblings and other relatives; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2012). No single factor is dispositive. *In re Austin W.*, 214 Ill. 2d 31, 50 (2005). A trial court's

determination that termination of parental rights is in the child's best interests will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *In re R.L.*, 352 Ill. App. 3d 985, 1001 (2004).

¶ 35　　Here, the evidence at the best interests hearing showed that D.H., A.H., S.W. and S.B. are in stable and safe foster homes, that they refer to their foster parents and "mom" and "dad," that they have developed a bond with their foster families and that they would like to be adopted by their foster parents. They are happy in their new environments, and their foster parents have expressed a desire to adopt them. Moreover, the record demonstrates that S.H. has no emotional connection to respondent, is fearful of reuniting with her mother and feels safe in the special care facility in which she currently resides. This evidence supports the trial court's decision to terminate respondent's parental rights. The trial court's best interests finding was not against the manifest weight of the evidence.

¶ 36　　　　　　　　　　　　　　　　　CONCLUSION

¶ 37　　The judgment of the circuit court of Knox County is affirmed in part and vacated in part.

¶ 38　　Affirmed in part and vacated in part.