2018 IL App (3d) 170539

Opinion filed April 4, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| *In re* P.J., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | Appeal No. 3-17-0539 |
| Petitioner-Appellee, | ) | Circuit No. 14-JA-317 |
| | ) | |
| v. | ) | |
| | ) | The Honorable |
| Jacob R., | ) | Katherine Gorman Hubler, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1        The State filed a petition for termination of parental rights against respondent alleging

that he was a depraved person pursuant to section 1(D)(i) of the Adoption Act (Act) (750 ILCS

50/1(D)(i) (West 2014)). The trial court granted the State's petition, finding respondent unfit. It

subsequently terminated his parental rights. We reverse and remand.

FACTS

¶ 3    In December 2014, the State filed a juvenile petition, alleging that P.J., born July 7, 2014, was a neglected minor, and the trial court adjudicated P.J. neglected. In November 2016, the State filed a petition to terminate parental rights. Count I alleged that April J., P.J.'s mother, was an unfit person because she failed to make reasonable progress toward the return of P.J. under section 1(D)(m) of the Act (*id.* § 1(D)(m)); count II alleged that respondent Jacob R., P.J.'s father, was an unfit person because he failed to make reasonable progress toward the return of P.J. under section 1(D)(m); and count III alleged that respondent was an unfit person because he was depraved under section 1(D)(i) of the Act (*id.* § 1(D)(i)). The State later dismissed count II.

¶ 4    At the adjudication hearing, the State submitted an exhibit of respondent's criminal history, including a 2001 possession of methamphetamine manufacturing chemical conviction (Class 2 felony), a 2002 possession of methamphetamine manufacturing chemical conviction (Class 2 felony), a 2005 possession of methamphetamine manufacturing material conviction (Class 1 felony), a 2010 possession of methamphetamine manufacturing chemical conviction (Class 3 felony), and a 2014 federal conspiracy to manufacture methamphetamine conviction (felony).

¶ 5    Respondent submitted an exhibit of his inmate education data transcript wherein it showed a list of courses he attended and completed while incarcerated. He also testified that he was currently incarcerated at the Thomson facility within the Bureau of Prisons. He initially stated that he would be released in 2023 but later stated that his earliest release date was 2020 or 2021. He had been prescreened to participate in a drug treatment program but could not enroll until he had four years or less remaining on his sentence. He attended a "small business planning" class, a drawing class, a financial analysis class, an "entrepreneur opportunity" class, a

"highly effective life" class, a "decoding recidivism" class, and a career preparation class. He received his GED while he was incarcerated in 2004. He also participated in inpatient drug treatment while incarcerated from 2003 to 2004. Respondent planned to sell his portrait drawings once he was released from prison.

¶ 6        The trial court determined that respondent was depraved, stating:

> "And the State has presented evidence that your most recent felony
> was in 2014, and there are 4 others. Now, that allows for you to try
> and rebut the presumption by clear and convincing evidence. And I
> do commend you for what you have done, but I don't think you've
> rebutted the presumption, and I'm going to find that the State has
> proven the petition."

¶ 7        Thereafter, a best interest hearing was held. The court determined that it was in the best interest of P.J. to terminate respondent's parental rights. Respondent appealed.

¶ 8                                    ANALYSIS

¶ 9        Respondent claims that the trial court erred when it found him unfit pursuant to section 1(D)(i) because (1) it applied the wrong standard of proof to his burden of rebutting the presumption of depravity and (2) he presented evidence that rebutted the presumption of depravity.

¶ 10       Respondent did not object or file a posttrial motion on this issue. The State argues that respondent's claim is forfeited or, alternatively, suggests that this court may consider respondent's unpreserved error under the plain error rule. A party must object at trial and file a posttrial motion to preserve an alleged error for review. *In re William H.*, 407 Ill. App. 3d 858, 869-70 (2011); *In re Christopher J.*, 338 Ill. App. 3d 1057, 1058 (2003). If a party fails to raise

3

an issue in the trial court, it is forfeited and may not be raised for the first time on appeal. *In re Marriage of Baecker*, 2012 IL App (3d) 110660, ¶ 20. The plain error doctrine allows this court to consider forfeited issues when a clear or obvious error occurred and (1) the evidence is so closely balanced or (2) the error affects substantial rights. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005); see also *In re S.H.*, 2014 IL App (3d) 140500, ¶ 22.

¶ 11    Unfitness determination proceedings are civil in nature. 750 ILCS 50/20 (West 2014). Although the plain error rule is generally applied to criminal cases, it also may be applied in civil cases, but the application is exceedingly rare. *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 856 (2010). Also, waiver is a limitation on the parties and not on the courts. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 33. Therefore, reviewing courts may consider waived issues in the interest of achieving a just result or maintaining a sound and uniform body of precedent. *Id.* ¶ 33; see also *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 16; *Daley v. License Appeal Comm'n*, 311 Ill. App. 3d 194, 200 (1999). We choose to consider respondent's waived issue in the interest of justice.

¶ 12    Section 1(D)(i) states:

> "There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2014).

¶ 13 In Illinois, the term "depravity" means " 'an inherent deficiency of moral sense and rectitude.' " *In re A.M.*, 358 Ill. App. 3d 247, 253 (2005) (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). The State shows depravity by establishing that respondent has a " 'deficiency' in moral sense and either an inability or an unwillingness to conform to accepted morality." (Internal quotation marks omitted.) *Id.* (quoting *In re J.A.*, 316 Ill. App. 3d 553, 561 (2000)). "Where the presumption of depravity is rebuttable, the 'parent is still able to present evidence showing that, despite his convictions, he is not depraved.' " *Id.* (quoting *J.A.*, 316 Ill. App. 3d at 562). If respondent presents evidence contradicting the presumption, the presumption is removed and the issue is determined based on the evidence presented. *J.A.*, 316 Ill. App. 3d at 562. The burden of proving by clear and convincing evidence that the respondent is depraved remains with the State. *A.M.*, 358 Ill. App. 3d at 254. Whether the trial court applied the correct legal standard is a question of law reviewed *de novo*. *NC Illinois Trust Co. v. Madigan*, 351 Ill. App. 3d 311, 314 (2004).

¶ 14 During the fitness hearing, the court stated that respondent had the burden of rebutting the presumption that he was depraved by clear and convincing evidence. Respondent need not rebut the presumption by clear and convincing evidence; rather, he only had to provide evidence opposing the presumption. See *A.M.*, 358 Ill. App. 3d at 253-54 ("Under the analysis in *J.A.* concerning rebuttable presumptions, once the respondent's evidence came into the case, the presumption of depravity ceased to exist."). If respondent presented this evidence, the issue is determined based on the evidence presented. *J.A.*, 316 Ill. App. 3d at 562. Based on *A.M.* and *J.A.*, the admission of respondent's inmate education data transcript rebutted the presumption.

¶ 15 "Fundamentally fair judicial procedures are critical for those parents facing the involuntary dissolution of their rights." *In re J.J.*, 201 Ill. 2d 236, 246 (2002) (citing *Santosky v.*

5

*Kramer*, 455 U.S. 745, 753-54 (1982)). The standard of proof is, therefore, important because "a parent's fundamental liberty interest cannot be protected if undue uncertainty is permitted in determining the facts supporting a termination of parental rights." *Id.* (citing *Santosky*, 455 U.S. at 757 n.9). This undue uncertainty can be just as detrimental in a fitness proceeding because a finding of unfitness is a condition precedent to termination of parental rights, which occurred in this case. See *In re J.F.*, 248 Ill. App. 3d 1, 5 (1992) ("[w]hile parental rights and responsibilities are of great societal and human importance, a parent's rights may be involuntarily terminated in the interests of the child's welfare, if the parent is adjudicated unfit"). An unrebutted presumption of depravity virtually ensures the termination of a respondent's parental rights.

¶ 16       In this case, by finding, on the basis of the wrong standard, that the presumption of depravity had not been rebutted, the trial court foreclosed any additional argument regarding respondent's alleged depravity. Respondent, absent the presumption, could have argued, for example, how the classes he had taken and those he planned to take when the Bureau of Prisons' time restriction on taking them was removed demonstrated not only a resetting of his moral compass but also that he had taken concrete steps to create a different life with different goals. We find that the trial court applied the wrong standard of proof in its depravity determination and remand this cause for a new unfitness hearing.

¶ 17                                              CONCLUSION

¶ 18       The judgment of the circuit court of Peoria County is reversed and remanded.

¶ 19       Reversed and remanded.

6