2020 IL App (2d) 190706-U
Nos. 2-19-0706 & 2-19-0718, cons.
Order filed January 13, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23(c)(2) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* T.H., Z.H., and J.H., Minors | ) ) ) ) | Appeal from the Circuit Court of Carroll County. |
| | ) ) ) | Nos. 16 JA-2 16-JA-3 16-JA-4 |
| | ) ) | |
| (The People of the State of Illinois, Petitioner-Appellee v. Shannon H., Respondent-Appellant). | ) ) ) | Honorable Val Gunnarsson, Judge, Presiding. |

_____

| | | |
|---|---|---|
| *In re* T.H., Z.H., and J.H., Minors, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| | ) ) ) ) | Nos. 16-JA-2 16-JA-3 16-JA-4 |
| | ) ) | Honorable |
| (The People of the State of Illinois, Petitioner-Appellee v. Jack M., Respondent-Appellant). | ) ) | Val Gunnarsson, Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Birkett and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:   After carefully reviewing the record in this cause, we determine that the trial court's findings that respondents were unfit on the basis of depravity pursuant to section 1(D)(i) of the Adoption Act (Act) (750 ILCS 50/1(D)(i) (West 2018)) and that it was in children's best interest that respondents' parental rights be terminated was not against the manifest weight of the evidence. Appeal No. 2-19-0706 and Appeal No. 2-19-0718 affirmed.

¶ 2    In this consolidated appeal, the circuit court of Carroll County found that respondents, Shannon H. and Jack M., were unfit parents under section 1(D)(b), (g), (m)(i), and (i) of the Act (750 ILCS 50/1(D)(b), (g), (m)(i), (i) (West 2018)). The circuit court subsequently terminated respondents' parental rights to T.H., Z.H., and J.H., and respondents appeal. Respondents challenge the finding of unfitness and whether it was in the best interest of the children to terminate respondents' parental rights. We affirm.

¶ 3                            I. FACTS

¶ 4    On or about September 1, 2016, petitions for adjudication of wardship were filed in the circuit court of Carroll County, Illinois. As to each child, the petitions alleged the following:

> "The minor is neglected in accordance with 705 ILCS 405/2-3(1)(b) in that the minor resides in an environment that is injurious to his welfare. On August 31, 2016, the father was arrested for domestic battery after the minor reported to a police officer that his father had struck his mother. The father of the minor was previously convicted in 2014 of domestic battery to the mother. In addition, the mother of the minor admitted to suffering from a morphine addiction and threatened to injure herself when she learned DCFS [the Department of Children and Family Services] was taking protective custody of the minor."

¶ 5    The court ordered temporary protective custody of the children, placed the children in relative foster care.

¶ 6     On October 20, respondents met with a representative of DCFS and reviewed the initial client service plan. A list of recommended services for each respondent was submitted to the court.

¶ 7     On November 15, 2016, Jack was arrested in Carroll County on a felony charge of possession of methamphetamine. He was incarcerated in the Carroll County jail and was released in January 2017 to attend in-patient drug treatment at the Sojourn House.

¶ 8     On November 29, 2016, the court adjudicated the children neglected. The first dispositional hearing was continued for Jack to complete drug treatment. However, on February 7, 2017, a warrant was issued for Jack's arrest due to his unsatisfactory discharge from Sojourn House for engaging in inappropriate sexual relations with Shannon in a visiting room. Jack was arrested on February 20, 2017, and remained in custody until June 20, 2017, when he was transferred to the Illinois Department of Corrections (DOC) to serve a three-year sentence for the possession of methamphetamine. Jack eventually was paroled from prison on December 6, 2018.

¶ 9     On October 23, 2017, Shannon was taken into custody on a petition to revoke probation regarding a previous conviction for aggravated battery. Shannon admitted to not completing her substance abuse treatment. Shannon's re-sentencing was scheduled for December 5, 2017. However, she failed to appear, and the court issued a warrant for her arrest. She subsequently was arrested on December 8, 2017, and she was held in jail until she was sentenced, on February 2, 2018, to two years' imprisonment with 137 days credit for time served. Shannon was released from prison on September 21, 2018.

¶ 10     On February 6, 2017, the court held a dispositional hearing. The court gave DCFS custody with discretion to place the children. Both respondents were absent from the hearing.

¶ 11     Five permanency hearings were held from May 2017 through October 2018. At each hearing, the court found each respondent had not made reasonable progress or efforts towards the

return home of the children. Jack was transported from the DOC to attend the hearings on May 4, 2017, April 4, 2018, and May 2, 2018. Shannon was present for the May 4, 2017, May 2, 2018, and October 3, 2018, hearings. She was transported from the DOC to attend the hearing on May 2, 2018. Neither respondent was present for the hearing on October 5, 2017.

¶ 12    For almost six months, Jack attended AA (Alcoholics Anonymous) and NA (Narcotics Anonymous) meetings once a week while incarcerated. The Carroll County jail did not offer any other types of counseling. As stated, Jack was released from jail to attend an in-patient substance abuse program but was discharged unsatisfactorily about three and one-half weeks later for violating the rules.

¶ 13    When he was housed at the Pickneyville Correctional Center, Jack attempted to pursue his client service plan. However, he was denied admission to available programs. Pickneyville did not offer an individual anger management program or a domestic violence program. He was wait-listed on a substance abuse program. Jack also had limited mental health treatment available but was wait-listed to see the psychiatrist. Jack attended church twice a week and attended a program similar to AA and NA. Jack also completed 50% of his pre-GED classes but was released before completion.

¶ 14    Shannon completed a mental health evaluation at Sinnissippi Health Center and enrolled in a counseling program. She took parenting classes but, after two classes, was unable to attend due to transportation problems. She also received counseling for mental health and domestic violence.

¶ 15    On February 4, 2018, Shannon was transferred to the Logan Correctional Center, where she remained until September 21, 2018. Shannon was wait-listed for a substance abuse program,

attended church regularly, attended AA, and has been drug-free since her incarceration. Upon her release, Shannon began attending counseling sessions for mental health and substance abuse.

¶ 16    The State filed motions to terminate respondents' parental rights on October 2, 2018, alleging that they were unfit pursuant to sections 50/1(D)(1)(b) (failure to maintain a reasonable degree of interest, concern, or responsibility); (g) (failure to protect children from conditions within environment injurious to their welfare); (m)(i) (failure to make reasonable efforts to correct the conditions); (m)(ii) (failure to make reasonable progress towards return of children during any nine-month period following adjudication of neglect); and (i) (depravity).

¶ 17    Following the testimony and presentation of exhibits, the trial court concluded that the State had met its burden by clear and convincing evidence that both parents were unfit on four of the five counts, excluding section 1(D)(m)(ii). As to the statutory provision for depravity (1(D)(i)), the court found that each respondent had three felony convictions, the last one of which was within five years of the filing of the petitions seeking termination of parental rights. The court noted that each respondent had committed a new felony while the children had "just been put into placement," and found that neither respondent presented any evidence to rebut the presumption of depravity.

¶ 18    After the best interest hearing, the court found that the State had proved by a preponderance of the evidence that it was in the children's best interest that the parental rights of respondents be terminated. Respondents timely appealed. We consolidated the appeals for review.

¶ 19                                II. ANALYSIS

¶ 20                                1. Unfitness

¶ 21    In Illinois, the Juvenile Court Act of 1987 (705 ILCS 405/1 *et seq*. (West 2018)) provides a two-stage process for involuntary termination of parental rights. First, the State must prove that the parent is "unfit" under one or more of the grounds set forth in the Adoption Act (Act). 705

ILCS 405/2-29 (West 2018); 750 ILCS 501/1(D) (West 2018). Because the termination of parental rights constitutes a complete severance of the parent-child relationship, proof of parental unfitness must be clear and convincing. *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

¶ 22 On appellate review, this court "will not disturb a finding of unfitness unless it is contrary to the manifest weight of the evidence." *In re Konstantinos H.*, 387 Ill. App. 3d 192, 203 (2008). A determination will be found to be against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or not based on the evidence presented. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). We give great deference to the trial court's finding of unfitness, defer to the trial court's factual findings and credibility assessments, and will not re-weigh the evidence anew on appeal. *In re April C.*, 345 Ill. App. 3d 872, 889 (2004).

¶ 23 The trial court found that the State proved each respondent unfit based on four counts. Where multiple allegations of parental unfitness are made in a proceeding to terminate parental rights, a finding that any one allegation has been proved obviates the need to review other statutory grounds. *In re S.H.*, 2014 IL App (3d) 140500, ¶ 28. We address whether the trial court's finding that the State proved respondents were depraved pursuant to section 1(D)(i) of the Act. 750 ILCS 50/1(D)(i) (West 2018).

¶ 24 Section 50/1(D)(i) provides:

"There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2018).

¶ 25    "A rebuttable presumption creates 'a prima facie case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption.' [Citation.]   However, once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed.  [Citation.]  The burden of proof does not shift but remains with the party who initially had the benefit of the presumption.  [Citation.]  The only effect of the rebuttable presumption is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail.  [Citation.]"  *In re J.A.*, 316 Ill. App. 3d 553, 562-63 (2000).

¶ 26    The Illinois Supreme Court has defined "depravity" as "an inherent deficiency of moral sense and rectitude."  *Stalder v. Stone*, 412 Ill. 488, 498 (1952).  Depravity must be shown to exist at the time of the petition to terminate parental rights, and "the 'acts constituting depravity *** must be of sufficient duration and of sufficient repetition to establish a "deficiency" in moral sense and either an inability or an unwillingness to conform to accepted morality.'  [Citation.]"  *J.A.*, 316 Ill. App. 3d at 561.  Where the presumption of depravity is rebuttable, the "parent is still able to present evidence showing that, despite his convictions, he is not depraved."  *Id.* at 562.

¶ 27    The State filed the motions to terminate parental rights on October 2, 2018.  The State presented certified copies of Jack's convictions for three felonies.  Two of the felony convictions were within five years of the filing of the termination petition (aggravated battery to a peace officer in 2014, and unlawful possession of methamphetamine in 2016).  These convictions showed clear and convincing evidence of Jack's inherent deficiency of moral sense and rectitude.  The evidence proved that Jack's depravity existed at the time the termination petition was filed, and that the acts constituting his depravity were of sufficient duration and of sufficient repetition to establish a

deficiency in Jack's moral sense and either an inability or an unwillingness of Jack to conform to accepted morality. See *J.A.*, 316 Ill. App. 3d at 561.

¶ 28 Under the analysis in *J.A.* concerning rebuttable presumptions, once Jack's evidence came into the case, the presumption of depravity ceased to exist. *Id.* at 562. The burden remained with the State to prove by clear and convincing evidence that Jack was unfit because of depravity. Jack could attempt to prove that he was not depraved.

¶ 29 As evidence that he was not depraved, Jack argued that he has been sober since his release from prison. As stated above, the motion to terminate parental rights was filed in October 2018, and Jack was not released from prison until December 2018. Evidence to rebut the presumption of depravity "can only be shown by a parent who leaves prison and maintains a lifestyle suitable for parenting children safely." *In re Shanna W.*, 343 Ill. App. 3d 1155, 1167 (2003).

¶ 30 In this case, Jack has not presented any evidence to rebut the presumption. Quite simply, Jack has not presented evidence that he had maintained a lifestyle suitable for parenting his children safely as of October 2, 2018, as he was not released from prison until December 2018. Jack acknowledges that the last felony conviction, possession of methamphetamine, occurred over two months after his children were removed from his custody. Thus, the evidence presented by the State proved that his depravity existed at the time the termination petition was filed, and that the acts constituting his depravity were of sufficient duration and of sufficient repetition to establish a deficiency in his moral sense and either an inability or an unwillingness of the respondent to conform to accepted morality. See *J.A.* 316 Ill. App. 3d at 561; *In re A.M.*, 358 Ill. App. 3d 247, 254 (2005).

¶ 31 The State's evidence was clear and convincing, and Jack failed to prove that he was no longer depraved. Therefore, we hold that it was not against the manifest weight of the evidence

for the trial court to find that Jack was unfit because of depravity.

¶ 32    As to Shannon, the State filed the motions to terminate her parental rights on October 2, 2018.  The State presented certified copies of Shannon's convictions for three felonies (a 2013 conviction for reckless conduct, and two April 2, 2017, convictions, one for aggravated battery, and one for obstructing justice), of which the latter two occurred within five years of the filing of the motions seeking termination of parental rights.  See 750 ILCS 50/1(D)(i) (West 2018).  The trial court observed that Shannon had committed a new felony soon after the minors had been placed in custody.  The State points out that the last two felony acts of April 2, 2017, were committed approximately seven months after the minors were removed from Shannon's custody. The obstruction of justice conviction related to Shannon's act of flushing a hypodermic syringe down the toilet at the Carroll County jail.

¶ 33    Like Jack, Shannon agreed that the State established the rebuttable presumption of depravity.  However, she claims that her recent sobriety rebutted the presumption.

¶ 34    The State notes that there is some conflict in the law as to what level of evidence must be presented to rebut the presumption of depravity.  In *J.A.*, the court stated that the amount of evidence needed to rebut the presumption depends upon the strength of the presumption.  *Id.* at 563 ("A party may simply have to respond with some evidence or may have to respond with substantial evidence.").  In *In re P.J.*, 2018 IL App (3d) 170539, ¶ 14, the court held that a parent need only "provide evidence opposing the presumption."  The court concluded that the admission of the respondent's inmate education data transcript rebutted the presumption of depravity.  *Id.*

¶ 35    We agree with the State that Shannon did not present sufficient evidence to rebut the presumption of depravity.  Shannon's sobriety did not last long and her attendance at AA and NA meetings while incarcerated was minimal.  Evidence other than the felony convictions also

supported a depravity finding.  The record reveals that, despite offers to correct substance abuse issues while on probation, Shannon repeatedly refused to comply with opportunities for treatment. These events occurred after the minors had been removed from Shannon's custody.

¶ 36    Additionally, even if the minimal evidence of sobriety was sufficient to rebut the presumption of depravity, neither respondent presented evidence that they had been rehabilitated. This court has recognized that "efforts in prison, while commendable [are] insufficient evidence of rehabilitation or lack of depravity."  *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 30. Respondents' sobriety in effect was attained while incarcerated, which we have noted is a "controlled environment."  *Id.*

¶ 37    The trial court found that neither respondent rebutted the presumption of depravity.  It was not against the manifest weight of the evidence for the trial court to find that Shannon was unfit because of depravity.

¶ 38                                2. Best Interest Determination

¶ 39    After the trial court finds a parent unfit, the issue becomes "whether, in light of the child's needs, parental rights *should* be terminated."  (Emphasis in original.)  *In re D.T.*, 212 Ill. 2d 347, 364 (2004).  A respondent's interest in maintaining the parent-child relationship must yield to the minor's interest in a stable, loving home life.  *Id.*  Under the Juvenile Court Act, the trial court must consider ten different factors in determining the best interest of a child:  (a) the child's physical safety and welfare, including food, shelter, health, and clothing; (b) the development of the child's identity; (c) the child's background and ties, including familial, cultural, and religious; (d) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (e) the child's wishes and long-term goals; (f) the child's community ties, including church, school, and friends; (g) the child's need

for permanence, including the need for stability and continuity of relationships with parental figures and siblings and other relatives; (h) the uniqueness of every family and child; (i) the risks related to substitute care; and, (j) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05)(a)-(j) (West 2018).

¶ 40    At the best interest portion of the termination proceeding, the State must prove by a preponderance of the evidence that it is in the minor's best interest to terminate parental rights and make the minor a ward of the court. *In re AL.P. v. Angel P.*, 2017 IL App (4th) 170435, ¶ ¶ 40-41. We will not reverse the trial court's best-interest determination unless it is against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 892 (2004). A decision is against the manifest weight of the evidence only if the facts clearly demonstrate that the court should have reached the opposite result. *In re D.M.*, 336 Ill. App. 3d 766, 773 (2002). Cases involving an adjudication of neglect and wardship are *sui generis* and must be decided on the unique facts of the case. *In re Z.L.*, 379 Ill. App. 3d 353, 376 (2008).

¶ 41    "No single factor is dispositive." *In re S.H.*, 2014 IL App (3d) 140500, ¶ 34. A trial court "may also consider the nature and length of the child's relationship with her present caretaker and the effect that a change in placement would have upon his or her emotional and psychological well-being." *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 78. The trial court's best interest determination need not contain an explicit reference" to each of the statutory factors and a reviewing court "need not rely on any basis used by the trial court in affirming its decision." *Id.*

¶ 42    Respondents contend the trial court's finding that it was in the best interest of the children to terminate their parental rights was against the manifest weight of the evidence. Jack points out that he and Shannon have remained drug-free, that he has continued to receive counseling since their release from prison, that he is currently working two jobs, and that he and Shannon have

reconciled and have been residing together for about three months. Jack feels that it is important that his children have a father in their lives. Shannon notes that she is currently looking for employment and is attending NA. She has given the children birthday and holiday gifts since they were removed from her custody and has been keeping informed of their well-being through her mother, Phyllis, where the children have been placed since approximately September 2016.

¶ 43    At the best interest hearing held on July 3, 2019, Phyllis, testified that each child had their own bedroom  They had attended the same school throughout their stay. Even before the children were removed from respondents' care, they lived" in her home "a lot of the time." Phyllis stated that she would like to have all three children living with her and her husband.

¶ 44    Kalah Alvey, a child welfare specialist with Lutheran Social Services of Illinois, who had monitored the case since September 2018, testified that the children appeared to be bonded to the grandparents and that each child appeared happy to be in the home.

¶ 45    The trial court's memorandum decision notes that the children had been placed outside of respondents' home for nearly three years and that Phyllis had been the "caring, loving protector" for the children as they "weathered the chaos" of respondents' lives. The court could not remove the children "from the security of their home with grandparents Phyllis and Alan and place them once again in limbo." The court resolved that the "best hope" for the children was to be "placed permanently in the care and custody of their maternal grandparents, who have given [them] a healthy, safe and secure home where they are loved."

¶ 46    We agree with the State that the trial court appropriately weighed the stable and loving environment that the children currently had with their grandparents against the uncertain future they would face given respondents' histories of short-term sobriety. It was not in the children's best interest to disrupt the placement where they feel safe and loved. Accordingly, we conclude

that the trial court's determination that it was in children's best interest that respondents' parental rights be terminated was not against the manifest weight of the evidence.

¶ 47                                    III. CONCLUSION

¶ 48     For the foregoing reasons, the judgment of the circuit court of Carroll County in Appeal No. 2-19-0706 and No. 2-19-0718 is affirmed.

¶ 49     Appeal No. 2-19-0706: affirmed.

¶ 50     Appeal No. 2-19-0718: affirmed.