2021 IL App (2d) 200629-U
No. 2-20-0629
Order filed August 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| In re ZY.D. & ZA.D., Minors | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | Nos. 14-JA-208 |
| | ) | 14-JA-209 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Christopher D. a/k/a | ) | Francis Martinez, |
| Christopher Y., Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Father's attorney granted leave to withdraw where counsel demonstrated that there was no nonfrivolous issue to raise on appeal.

¶ 2    Respondent, Christopher D., appeals the trial court's rulings that (1) he was an unfit person under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018) (Act)) and (2) the termination of his parental rights was in the best interests of his son, Zy. D., and daughter, Za. D. Christopher's appointed appellate counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re Alexa J.*, 345 Ill. App. 3d 985 (2003), which asserted that there are no issues of arguable merit to be raised on Christopher's behalf.

¶ 3    We denied prior counsel's motions for leave to withdraw as insufficient under *Anders* and *Alexa J.*, and entered a limited remand for the appointment of new appellate counsel. See *In re Zy.D. & Za.D.*, 2021 IL App (2d) 200629 (May 20, 2021). Now, with the benefit of new counsel and an appropriate memorandum of law, we grant counsel's motion.

¶ 4                                    I. BACKGROUND

¶ 5    In 2014, the State filed neglect petitions concerning Zy. and Za., who are male and female twins who were both five at the time. The children lived with their mother and another sibling, neither of whom are parties to this appeal. During this time, Christopher was incarcerated and the Department of Children and Family Services (DCFS) took the children into protective custody. In November 2014, the children's mother stipulated to the allegations in the State's neglect petition. Then, in February 2015, both parents stipulated that they were dispositionally unfit to parent the children and agreed that guardianship should be temporarily transferred to DCFS.

¶ 6    In August 2016, the children's mother was found unfit and the court found it was in the children's best interests to terminate her parental rights. In addition, Christopher signed an irrevocable surrender of his rights with specific consent for the children to be adopted by his mother. It was ultimately determined, however, that Christopher's mother, who lived in Minnesota and had engaged in domestic violence with her husband, was ineligible to retain custody of the children. See 45 ILCS 15/1 (West 2018).

¶ 7    In 2020, the State filed a renewed motion to terminate Christopher's parental rights, which alleged four grounds of unfitness. Specifically, the State alleged that Christopher (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) failed to make reasonable efforts to correct the conditions that were the basis the children's removal from his care within specified nine-month periods

(*id.* § 1(D)(m)(i)); (3) failed to make reasonable progress towards the children's return to his care within specified nine-month periods (*id.* § 1(D)(m)(ii)); and (4) was depraved (*id.* § 1(D)(i)). The State's petition sought to terminate Christopher's parental rights and to have DCFS's guardianship administrator appointed as the children's guardian with the power to consent to Zy. and Za.'s adoptions.

¶ 8    After hearings, the trial court determined that Christopher was unfit based on each count alleged in the State's petition and further determined that it was in the children's best interests to terminate his parental rights. Christopher timely appealed.

¶ 9                                    II. ANALYSIS

¶ 10    As noted, we denied motions to withdraw filed by Christopher's first appellate counsel as and ultimately concluded that fundamental fairness required that he be appointed new appellate counsel. *In re Zy.D. & Za.D.*, 2021 IL App (2d) 200629 (May 20, 2021). Now, pursuant to *Anders* and *In re Alexa J.*, Christopher's appellate attorney moves to withdraw as counsel.

¶ 11    Counsel's motion states that she has thoroughly reviewed the record, researched the applicable statutes and case law, and concluded that there are no meritorious issues to be raised on appeal. Counsel supports her motion with a memorandum of law, which includes a thorough statement of facts, and suggests possible issues for discussion, but ultimately explains why this appeal presents no nonfrivolous issues. Counsel further states that she served Christopher with a copy of the motion by certified mail at his last known address and informed him of the opportunity to present any additional matters to the court within 30 days. We advised Christopher that he had 30 days to respond to the motion. That time has passed, and Christopher did not respond.

¶ 12    In accordance with *Alexa J.*, appellate counsel has identified two potential issues. The first potential issue is whether the trial court's unfitness findings were against the manifest weight of

the evidence. The second potential issue is whether the court's decision to terminate Christopher's parental rights was also against the manifest wight of the evidence. Counsel discusses the evidence in the record and explains why she believes these issues lack merit. Having reviewed the record, we agree with counsel's assertions.

¶ 13     The Juvenile Court Act of 1987, 705 ILCS 405/1 *et seq*. (West 2018), provides a two-stage process for involuntary termination of parental rights. The trial court initially holds an unfitness hearing, during which the State must prove the parent is unfit, as defined in section 1(D) of the Adoption Act, by clear and convincing evidence. *In re Deandre D*., 405 Ill. App. 3d 945, 952 (2010). If the court finds the parent to be unfit, the court then conducts a best-interests hearing to determine, by the preponderance of the evidence, whether it is in the best interests of the child to terminate the unfit parent's rights. *Id.* We will reverse a trial court's unfitness or best-interests determination only if they are against the manifest weight of the evidence. *In re S.H.*, 2014 IL App (3d) 140500, ¶¶ 28, 34. A decision is against the manifest weight of the evidence where the opposite result is clearly evident from the record. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006).

¶ 14     We first address unfitness. Section 1(D) of the Adoption Act provides various grounds under which a parent may be found unfit and, here, the trial court found Christopher unfit on all four grounds alleged in the State's petition. Counsel addresses each of these findings in her memorandum of law and argues no meritorious arguments could be made with respect to all four counts. We agree.

¶ 15     We focus our attention on the issue of depravity, as any one count, properly proven, is sufficient to sustain a finding of parental unfitness. See *In re D.C.*, 209 Ill. 2d 287, 296 (2004).

Depravity is understood to mean an " 'inherent deficiency of moral sense and rectitude.' " *In re J.A.*, 316 Ill. App. 3d 553, 561 (2000) (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)).

¶ 16    Section (D)(1)(I) of the Adoption Act provides:

"There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state *** ; and at least one of these convictions took place within five years of the filing of the petition or motion seeking termination of parental rights." 750 ILCS 50/1(D)(I).

¶ 17    In the trial court, the State pled and proved Christopher's qualifying felony history. In 2004, Christopher was convicted of possession of a stolen motor vehicle (PSMV) (625 ILCS 5/4-103(a)(1) (West 2004)) and possession of a controlled substance (720 ILCS 570/402(c) (West 2004)). In 2005, Christopher pled guilty to vehicular hijacking, a Class X offense (720 ILCS 5/18-3 (West 2004)). In 2011, Christopher again pled guilty to PSMV (625 ILCS 5/4-103(a)(1)) and was sentenced as a Class X offender based on his criminal history. Finally, in August 2015, Christopher was convicted of burglary (720 ILCS 5/19-1(a) (West 2014)) and aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2014)) and sentenced to two concurrent 8-year terms (served day-for-day), again as a Class X offender. Christopher's 2015 criminal cases were within five years of the filing of the amended termination petition in this case in February 2020.

¶ 18    There arose, hence, a presumption of depravity, and the burdened shifted to Christopher to "present evidence that, despite his [felony] convictions, he is not depraved." *In re J.A.*, 316 Ill. App. 3d at 562. As we noted in our earlier opinion in this case, Christopher testified at the unfitness hearing that he completed two anger management courses while he was in prison. That was sufficient evidence to determine that Christopher had rebutted the statutory presumption (see *In re*

*P.J.*, 2018 IL App (3d) 170539, ¶ 16), but the trial court stated that it "would find depravity whether or not the presumption would have kicked in."

¶ 19     Likewise, we agree with counsel that there was clear and convincing evidence that Christopher was depraved. Christopher's children were born in 2009; he was convicted of three felonies after they were born and has been incarcerated for most of his children's lives. Thus, Christopher "continued to commit [his] crimes when [his] children *** presumably needed him." *In re T.S.*, 312 Ill. App. 3d 875, 878 (2000). Additionally, a parent may be considered no longer depraved if he or she "leaves prison and maintains a lifestyle suitable for parenting children safely." *In re Shanna W.*, 343 Ill. App. 3d 1155, 1167 (2003). That did not happen with Christopher. Nearly all of Christopher's crimes occurred while he was on parole or supervised release from an earlier offense. Moreover, after Christopher was released from prison in January 2019, he admitted that he went "AWOL" and evaded the authorities from November 3, 2019, through June 5, 2020. On June 5, 2020, Christopher was arrested in Rockford for aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2020) (strangulation)) and was also arrested on an interstate warrant for parole violation. We note that the State's termination petition was filed in this case in February 2020, which was during the time when Christopher was in violation of his parole and before his most recent felony charge.

¶ 20     These acts demonstrate that Christopher was either unable or unwilling to "conform to accepted morality." *In re J.A.*, 316 Ill. App. 3d at 561. Accordingly, we agree with counsel that the trial court's finding that Christopher was depraved, and therefore unfit, was not against the manifest weight of the evidence.

¶ 21     Next, we determine whether there are any potentially meritorious issues regarding the trial court's best-interests determination. At this stage, we are not so much concerned with the parent's

past conduct. Instead, we focus on the children's welfare and whether the termination of a parent's rights will improve their future. See *In re D.M.*, 336 Ill. App. 3d 766, 771-72 (2002). "The issue is no longer whether parental rights can be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated ." (Emphasis in original.) *In re D.T.*, 212 Ill. 2d 347, 364 (2004).

¶ 22    When considering whether termination of parental rights is in a child's best interests, the trial court must consider a number of factors within the context of the child's age and developmental needs including: (1) the physical safety and welfare of the child; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05)(a)-(j) (West 2018). At this point in the proceedings, a parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *In re M.C.*, 2018 IL App (4th) 180144, ¶ 34.

¶ 23    On October 5, 2020, the trial court conducted a best-interests hearing where it heard testimony from Ann Pastula, a caseworker with DCFS's contractor, Camelot Care Center. Pastula testified that both children were 11 and were residing in separate foster homes at the time. In June of 2020, Zy. was specially placed with a foster family in Kane County. Pastula reported that Zy. was doing well at school and, during the COVID-19 pandemic, he was e-learning at home. During this time, he had "increased his outside activity by swimming, bicycling, [and] picking up cross country." Pastula testified that Zy. was adapting well to his foster parents and siblings. Zy. has his

own room in his foster family's residence; he picked out his own decorations for the room, and helps with cooking, cleaning, and other chores. Pastula testified that Za. was placed with a foster mother in Stephenson County. Za. was likewise doing well in school and at home, where she helps with chores and cooking, and likes to walk to the grocery store.

¶ 24 According to Pastula, both children reported that they understand what it means to be adopted and stated that they wanted to be adopted together. Both children were found to be in good health and well attended to in their current placements. Pastula stated that she had not sought permanency commitments from either foster family as the agency was attempting to have the children placed together as soon as possible. In the meantime, the foster families arranged weekly sibling visits for Zy. and Za.

¶ 25 We note that the lack of an adoptive placement does not preclude a finding that termination is in the children's best interests. See *In re F.P.*, 2014 IL App (4th) 140360, ¶ 92. While Zy. and Za. appear to be doing well in their foster placements, Christopher has not visited with his children or sought to communicate with them since the first two years of this case. Much of this was due to the fact that Christopher had entered specific consents for the children and, by his own admission, did not want the children to visit him any time he was incarcerated. We further note that there was no evidence Christopher sought visitation, sent letters of support, or inquired about the children's welfare during the time when Christopher was *not* in prison. *Cf. In re T.D.*, 268 Ill. App. 3d 239, 247 (1994). Based on the foregoing, we agree with counsel that it would be meritless to argue that the termination of Christopher's parental rights was against the manifest weight of the evidence.

¶ 26                                    III. CONCLUSION

¶ 27 As we noted in our earlier opinion, delays in this case have necessarily taken us beyond the 150-day deadline for issuing our decision pursuant to Illinois Supreme Court Rule 311(a)(5)

(eff. July 1, 2018). Once again, we find good cause has been shown, as the delay was necessary to ensure that Christopher's rights were properly represented in this appeal. For the reasons stated, we grant counsel's motion for leave to withdraw and affirm the judgment of the circuit court of Winnebago County.

¶ 28    Affirmed.