2021 IL App (2d) 200629
No. 2-20-0629
Opinion filed May 20, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ZY. D. and ZA. D., Minors | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | Nos. 14-JA-208 |
| | ) | 14-JA-209 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Christopher D. | ) | Francis Martinez, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     We write to clarify the standard for determining whether to accept a motion by appellate

counsel to withdraw from representing a respondent parent in abuse and neglect proceedings when

counsel claims that there are no nonfrivolous issues to appeal. See generally *Anders v. California*,

386 U.S. 738 (1967). Here, counsel's second *Anders* motion mirrors an *Anders* motion that we

rejected in *In re Alexa J.*, 345 Ill. App. 3d 985 (2003). Because the motion is insufficient, and

because counsel failed to follow the directions in our minute order in response to his first motion,

we deny the motion and remand this case to the trial court for the appointment of new counsel.

¶ 2                                    I. BACKGROUND

¶ 3    In 2014, the State filed neglect petitions concerning Zy. D. and Za. D., who are male and female twins. The children were adjudicated neglected and made wards of the court. This appeal concerns only the children's father, Christopher D. In 2016, Christopher signed an irrevocable surrender of his rights with specific consent for the children to be adopted by his mother. It was ultimately determined that Christopher's mother, who lived in another state and was indicted for domestic violence, was ineligible to adopt the children.

¶ 4    In 2020, the State filed a renewed motion to terminate Christopher's parental rights, which alleged four grounds of unfitness. Specifically, the State alleged that Christopher (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) failed to make reasonable efforts to correct the conditions that were the basis for the children's removal from his care within specified nine-month periods (*id.* § 1(D)(m)(i)); (3) failed to make reasonable progress toward the children's return to his care within specified nine-month periods (*id.* § 1(D)(m)(ii)); and (4) was depraved (*id.* § 1(D)(i)). After hearings, the trial court determined that Christopher was unfit based on each count alleged in the State's petition and further determined that it was in the children's best interests to terminate Christopher's parental rights. Christopher, who was previously found indigent, filed a notice of appeal, and the court appointed attorney Thomas Laughlin to represent Christopher on appeal.

¶ 5    Counsel filed an initial *Anders* motion and supporting memorandum in which he generally asserted that no nonfrivolous issue could be presented on Christopher's behalf. Counsel's memorandum contained a 24-page statement of facts, which almost exclusively consisted of text that was copied and pasted directly from the common law record and the report of proceedings, with little accompanying explanation. (The information was at least arranged in chronological

order.) Counsel's "Analysis" section consisted of six pages, most of which was termination boilerplate.

¶ 6    Counsel told us that he would *not* address the reasonable progress and reasonable efforts counts of the State's petition (counts II and III) because *we* may affirm an overall finding of unfitness on any basis appearing in the record. See *In re C.W.*, 199 Ill. 2d 198, 210 (2002). Then, curiously, counsel did attempt to address the progress and efforts counts by stating the following: "Due to the fact that those counts refer to specific time periods from years ago and while Christopher was incarcerated, it is possible that some argument could be made that they should not now be used to determine [his] current unfitness." But counsel seemingly rejected that point as irrelevant by noting that Christopher was found unfit under count I for failure to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare (750 ILCS 50/1(D)(b) (West 2018)) and count IV for depravity (*id.* § 1(D)(i)). Counsel then went on to discuss the evidence pertaining to counts I and IV, which included Christopher's negligible visitation with the children for years and the fact that Christopher had been convicted of, as the trial court put it, "a string of felonies[,]" which triggered the statutory presumption of depravity (*id.*). Then, counsel's *Anders* memorandum discussed the children's best interests largely by copying and pasting the 10 statutory best-interest factors (see 705 ILCS 405/1-3(4.05) (West 2018)) and then copying and pasting (for a second time) the trial court's comments at the conclusion of the best-interest hearing.

¶ 7    Counsel's first *Anders* memorandum seemed to be of two minds. On the one hand, counsel was representing that there was no nonfrivolous issue that he could raise regarding unfitness, but then counsel suggested that he *could* argue against the trial court's efforts and progress findings, but chose not to because, again, *we* may affirm a finding of unfitness on any ground. See *In re*

*C.W.*, 199 Ill. 2d at 210 ("Although section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be deemed 'unfit,' any one ground, properly proven, is sufficient to enter a finding of unfitness." (Emphasis omitted.)). It is axiomatic that counsel, whether seeking to withdraw or otherwise, does not have the same authority or responsibility that this court has. "Under *Anders*, appellate counsel's request to withdraw must be 'accompanied by a brief referring to *anything* in the record that might arguably support the appeal.' " (Emphasis added.) *In re Alexa J.*, 345 Ill. App. 3d at 987 (quoting *Anders*, 386 U.S. at 744). Accordingly, we denied counsel's first *Anders* motion without prejudice in a minute order and directed counsel that, if he chose to file a second motion to withdraw, he "must address *all* of the unfitness counts in the State's petition" (emphasis in original) as well as any other issues appearing in the record. We also noted that this was not the first time we as a court have addressed counsel's performance, and we cited prior instances involving his representation.

¶ 8    Shortly after our minute order, we received counsel's second *Anders* motion. As is customary, we allowed Christopher 30 days to respond to counsel's motion, but he did not reply. We now take the matter up again.

¶ 9                                    II. ANALYSIS

¶ 10    As we noted in *Alexa J.*, an accompanying *Anders* brief "must set out *any* irregularities in the trial process or other potential error, which, although in [counsel's] judgment not a basis for appellate relief, might *** be meritorious.' " (Emphasis in original.) 345 Ill. App. 3d at 987 (quoting *In re Brazelton*, 237 Ill. App. 3d 269, 271 (1992)). We also repeated in *Alexa J.* that an *Anders* memorandum must "include transcripts of the fitness and best interest hearings to enable us to fulfill our responsibilities" in determining whether an appeal is meritless (*id.* at 989 (citing *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000)); however, counsel need not personally supply the

record to us in cases such as this, as it is generated by the circuit court clerk. See, *e.g.*, *In re Phoenix F.*, 2016 IL App (2d) 150431, ¶ 16 (noting that indigent parents are entitled to a record of sufficient completeness to permit proper state-court appellate review of termination orders (citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996))). Counsel should, however, at a minimum, ensure that we have a sufficient record on file (*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)) and should further supply us with a memorandum that convinces us of the merits of the motion to withdraw, but is " 'tempered by [counsel's] duty to the client' " (*Alexa J.* 345 Ill. App. 3d at 987 (quoting *Brazelton*, 237 Ill. App. 3d at 271).

¶ 11    As a matter of doctrine, we note that *Anders* was based not on the sixth amendment's right to counsel, which does not extend to appellate proceedings (*Martinez v. Court of Appeal of California*, 528 U.S. 152, 160 (2000)), but on the idea, first announced in *Douglas v. California*, 372 U.S. 353 (1963), that the equal protection of the laws requires the government to provide the indigent with counsel in the initial appeal from a criminal conviction if the affluent are permitted to appeal with the assistance of counsel. Thus, " 'an indigent parent in a termination proceeding brought under the Juvenile Court Act is entitled to court-appointed counsel, not because the due process clause of the Illinois or United States Constitutions mandates it, but because the legislature has chosen to guarantee the assistance of counsel to indigent parents.' " *In re Br. M.*, 2021 IL 125969, ¶ 41 (quoting *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 461 (2002)). Regardless of the source of the right to counsel, however, it is clear that a parent is initially entitled to counsel that is *effective*, as a safeguard to adversarial and nonadversarial judicial process. See *id.* ¶ 42.

¶ 12    In an *Anders* case, counsel is essentially offering us his or her expert opinion that an appeal is meritless, "and so we must have confidence that counsel thoroughly evaluated the record before we will let the lawyer guide our assessment of the appeal." *United States v. Palmer*, 600 F.3d 897,

898 (7th Cir. 2010) (*per curiam*); see also *Alexa J.* 345 Ill. App. 3d at 987 (citing *Brazelton*, 237 Ill. App. 3d at 271). "But if the brief falls short of that mark, we will not have faith in the lawyer's opinion and must deny the motion to withdraw." *Palmer*, 600 F.3d at 898.

¶ 13   Counsel's second motion is all but identical to his first save for one point. With respect to both the efforts and progress counts, counsel added the following paragraph to each section:

> "During these time periods [*i.e.*, the periods alleged in the petition, which were generally November 2014 through August 2016], Christopher was incarcerated and services were not available to him. The record reflects that the Counsels agree that he had done what he could under the circumstance[s], but that he did not and could not have made any further reasonable efforts. Christopher testified that services were not available to him while he was incarcerated. Taking that as being true, it is also true that he did not engage in any services after his release on parole."

After careful review, we have determined that counsel's statements are not borne out by the record.

¶ 14   Christopher testified that there were no parenting classes available at any of the four Illinois Department of Corrections (IDOC) facilities where he was incarcerated, but that did not hold true for other services. Specifically, Christopher testified that he had completed two anger management courses and engaged in some mental health services. Furthermore, Christopher testified that he was told that he did not need to engage in domestic violence counseling through IDOC because he had signed specific consents for his children's adoption. The relevant exchanges include the following:

> "THE COURT: I just want to make sure I have my dates right. So you were paroled in January of 2019. So you actually spent quite a bit of time at Graham; is that right, sir?

[CHRISTOPHER]: Correct. Which I had a mental health counselor that I talked to, but they didn't—I was on the wait[ ]list for a class.

THE COURT: Okay.

[CHRISTOPHER]: And I completed two anger management courses.

MS. CACCIAPAGLIA [(ASSISTANT STATE'S ATTORNEY)]: Is it your testimony, then, that domestic violence services were not available at any of the Illinois Department of Corrections facilities that you were at?

A. To my knowledge, I didn't—I didn't know if there was or there wasn't.

Q. So you don't know?

A. No, I don't. No, I don't.

THE COURT: It's okay if you don't know, sir. You just tell us—it's all right if you don't know. Just to the best of your recollection.

* * *

[MS. CACCIAPAGLIA]: Okay. And at any point at any of those four facilities did you ask your guidance counselor if there w[ere] domestic violence services available to you?

A. See, when I transferred my rights over, the original lady that was on my case, Kala, she told me that it was no need for me to even pursue or even take the class because I signed the rights to my kids to get adopted out.

Q. Okay. So that was when you signed your specific consents for adoption you were told you didn't need to worry about that?

A. Right.

Q. Okay. So that was in August of 2016. So you would have been in Statesville at that time; correct?

A. Yeah."

Thus, the record indicates that Christopher *did* engage in some services during his time in IDOC.

¶ 15    Furthermore, we can find no support for counsel's statement that "[trial] [c]ounsels agree[d] that [Christopher] had done what he could under the circumstance[s]." At closing arguments, the State and the children's guardian *ad litem* asserted that Christopher neglected to participate in offered services while Christopher's attorney argued that services were improperly withheld from him.

¶ 16    Here, counsel's *second Anders* brief misstates what services Christopher testified he attempted and completed. In fact, counsel's brief makes it appear as though Christopher did *nothing*. By misstating that crucial evidence, counsel portrayed this appeal as meritless (and to Christopher, hopeless) when that might not be the case. Even though Christopher was ultimately found to be depraved, evidence that he had taken some steps at least rebutted the statutory presumption, which the trial court apparently considered but counsel neglected to mention in his *Anders* brief. See, *e.g.*, *In re P.J.*, 2018 IL App (3d) 170539, ¶ 16 (holding that evidence that respondent father took education classes while incarcerated and intended to take additional classes rebutted the presumption of depravity).

¶ 17    We hasten to add that nothing we have said should be construed as an opinion on the merits in this matter. We further lament that these delays have necessarily taken us beyond the timeframe for issuing our decision under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018). Under the circumstances of the present case, good cause for delay has been shown, as the 150-day timeframe must be subordinate to the justice this case deserves.

¶ 18    Our decision today is about the process for appellate counsel to withdraw, as "[f]undamentally fair judicial procedures are critical for those parents facing the involuntary dissolution of their rights." *In re J.J.*, 201 Ill. 2d 236, 246 (2002) (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)) These are rights and responsibilities of "deep human importance" (*In re Paul*, 101 Ill. 2d 345, 351-52 (1984)), and there are fundamental liberty interests at stake (*Santosky*, 455 U.S. at 753). Where counsel's representation of the record is not borne out by the record itself, we simply cannot accept counsel's representation that an appeal is meritless.

¶ 19                                    III. CONCLUSION

¶ 20    In sum, we deny counsel's *Anders* motion and remand this case to the circuit court of Winnebago County for the appointment of new counsel.

¶ 21    Cause remanded with directions.

**No. 2-20-0629**

| | |
|---|---|
| **Cite as:** | *In re Z.D.*, 2021 IL App (2d) 200629 |
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, Nos. 14-JA-208, 14-JA-209; the Hon. Francis Martinez, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas E. Laughlin, of Rockford, for appellant. |
| **Attorneys for Appellee:** | Joseph W. Hanley, State's Attorney, of Rockford (Patrick Delfino and Edward R. Psenicka, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |