NOTICE

Decision filed 01/15/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241114-U

NO. 5-24-1114

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* CHRISTOPHER S., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-JA-145 |
| | ) | |
| Brooke M., | ) | Honorable |
| | ) | Martin J. Mengarelli, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Evidence amply supported the circuit court's findings that respondent was unfit and that the minor's best interests required terminating her parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2    Respondent, Brooke M., appeals the circuit court's order of October 15, 2024, terminating her parental rights to Christopher S. Her appointed appellate counsel concludes that there is no reasonably meritorious issue that could support an appeal. Accordingly, counsel has filed a motion to withdraw, along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of this motion, this court has provided her with an opportunity to respond, and she has done so. However, after considering the record on appeal,

1

counsel's motion and supporting memorandum, and respondent's response, we agree that there is no issue that could support an appeal. Accordingly, we grant counsel's leave to withdraw and affirm the circuit court's judgment.

¶ 3                                                    BACKGROUND

¶ 4      On July 15, 2022, the State filed a petition for adjudication of wardship alleging that respondent and the child's "legal" father, Wesley M., had neglected Christopher S. The petition alleged, *inter alia*, that respondent had untreated mental health issues and that both she and Wesley M. had substance abuse issues. These issues impaired their ability to adequately care for the child. Further, respondent and Wesley M. had a previous history with the Department of Children and Family Services (DCFS), which included an indicated finding for lack of supervision of the child. Respondent and Wesley M. currently had pending child-endangerment charges in Bond County involving the same child. Moreover, the petition alleged that the parents lacked stable housing.[1]

¶ 5      A request for shelter care filed by DCFS related that an anonymous hotline caller reported that the family moved frequently, staying at various motels, and that the parents gave the child Xanax and marijuana to calm him down and help him sleep. DCFS noted that a previous investigation for inadequate supervision found that the parents had left the child in a car while they were at a casino for more than an hour. The hotline caller further advised DCFS that both parents were on felony probation, had a history of using methamphetamine and cannabis, and regularly kept a gun although neither was authorized to own a gun.

¶ 6      The DCFS investigator reported that respondent denied using any drug, other than marijuana, and denied giving anything to the child other than melatonin. An oral swab was

---

[1]The petition listed Matthew S. as the putative father of the child; however, Matthew S. is not a party to this appeal. Further, the circuit court struck Wesley M. as a party to the proceedings on December 19, 2022.

presumptively positive for methamphetamine. A subsequent urine test was negative, although the testing facility "reported concerns with test integrity." Respondent acknowledged that the family was transient, staying in various hotels. Respondent's husband, Wesley M., interjected that he believed the report was made by someone to whom he owed money. The circuit court found probable cause to remove the minor from his parents' custody. The parents later failed to appear for a hearing because both were in custody in Madison County.

¶ 7    A service plan was established that required respondent to complete substance abuse and mental health assessments and follow all recommendations, maintain stable housing, complete a parenting class, and cooperate with the agency. A visitation schedule also was established. Initial reviews rated respondent unsatisfactory for all tasks.

¶ 8    On December 19, 2022, a default adjudicatory order found the minor neglected. An accompanying dispositional order found respondent unfit. Respondent subsequently moved to "continue" the hearings, stating that her husband had falsely told her that the hearing had been moved to a later time. The circuit court later denied the motion, finding that respondent was present when the circuit court set the hearing date and time.

¶ 9    By February 2023, respondent was still not following through with substance abuse recommendations or random drug testing. Respondent completed a drug test on October 6, 2022, but informed the caseworker that she would not participate in any more drug tests without her attorney present. She later informed the caseworker that she did not have an attorney. She further declared that she would not participate in any services that implied she had mental health issues. She had not had stable housing since the case began. She had not completed a parenting class, but was, however, engaging in visitation.

¶ 10    A November 2023 report related that respondent reported undergoing a substance abuse evaluation, following which no treatment was recommended. However, she did not provide details and did not sign a release for records. She reported having completed a mental health evaluation that did recommend outpatient treatment. The report noted that she had been discharged from the program for lack of participation.

¶ 11    On December 14, 2023, respondent filed a notice of appeal. This court ultimately dismissed the appeal, finding that none of the orders at issue had been timely appealed. *In re Christopher S.*, No. 5-23-1318 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 12    Subsequent reports noted little change except that respondent completed a parenting course. On September 25, 2024, the State petitioned to terminate respondent's parental rights. The petition alleged that she had failed to make reasonable efforts to correct the conditions resulting in the child's removal during any nine-month period between December 19, 2022, and the date of the petition's filing, and had failed to make reasonable progress toward the child's return during any nine-month period between January 20, 2023, and the date the petition was filed.

¶ 13    At the October 24, 2024, hearing, Rachel Hobbs, the family's initial caseworker, testified that respondent had never completed an integrated assessment or a substance abuse assessment. Respondent had failed to appear for most of the scheduled drug tests. She did complete a mental health assessment which recommended follow-up treatment. She appeared for one session before being discharged from the program for lack of participation.

¶ 14    According to Hobbs, respondent had completed a parenting course, the one service plan task on which she was successful. She had housing, but it was inadequate. In summary, Hobbs stated that when the case was given to another caseworker, Nikki Brunson, in March 2024, respondent was in much the same position as when the case began.

4

¶ 15    Brunson testified similarly to Hobbs. She testified that respondent's housing situation was unknown because respondent reported that her roommate was moving, and she would have to find a new home. Respondent provided Brunson an address but, when Brunson visited the site, the house was boarded up with a sign stating that it was not for rent, and she later discovered that the property was in foreclosure and would be sold.

¶ 16    According to Brunson, respondent had had seven scheduled visits with the child since March. She attended four and missed three. A case review of the records showed that respondent had been similarly inconsistent before March. After observing some visits, Brunson opined that respondent was more of a friend to the child. She further opined that respondent was an unfit parent given that respondent had not completed services and had not made progress in correcting the conditions that brought the child into care.

¶ 17    Respondent testified narratively that DCFS's report had concluded that the allegations in the initial hotline report of substance abuse and giving the minor Xanax and marijuana were unfounded. She questioned why the State was able to take her son when she had committed no crime and "caused no abuse or neglect" to him.

¶ 18    According to respondent, the DCFS investigator told her that they were taking the child into custody because respondent's husband was putting up new drywall in his father's house, creating a hazard for the minor. She stated that she had filed a pleading, as follows:

"[A] complaint in the Supreme Court that actually found the DCFS investigator in the wrongful act of continuing the shelter care hearing without my and the punitive [*sic*] father's, Wesley [M.'s], presence, who was incarcerated at the time, and the wrongful seizure and the continued withholding of the minor. The case right now in the Supreme Court is on mediation."

¶ 19 Respondent claimed that the existence of the "supreme court" case was evidence that the State had wrongfully seized her son. She stated, "the reason I was given was because my husband owed somebody." She continued:

"[T]here was no reason, not even a reason to terminate my parental rights because, I mean, in the safety assessment, it said that she felt that my son wasn't—that he was safe. He was clean. He was happy. He was healthy, all of that, to me being unfit. I've lived at *** since I moved here in 2021 of September. I have not been at any other address except for there has been occasional times of staying in hotels.

And Nikki, the house she talked about was right next door to the house that I live at. That was the homeowner that I live with. That was his wife's nephew's house. They sold it. Yes. They sold it between each other. And the gal's mom and dad had just died, and then the house went up for sale. And then they said that it was being rented and it was just a big mixup there. But I'm still at ***."

¶ 20 Respondent claimed that the caseworkers had never told her that her progress was unsatisfactory, and she had completed all of the required services "besides the counseling." She insisted that counseling was not necessary because her only issue was depression at the loss of her son.

¶ 21 The circuit court found respondent unfit based on her failure to make reasonable efforts or reasonable progress. Accordingly, the circuit court proceeded to a best-interests hearing.

¶ 22 At that hearing, Brunson testified that the child was placed with his stepfather's mother. He was bonded with the new family, which included adopted twin sisters. The child trusted them. He would tell them about his school day and felt secure at home. He had his own room and

appeared happy. The foster parent had signed commitment papers. Brunson opined that the child's bests interests dictated that he remain with the foster family.

¶ 23 Respondent believed that it was not in the child's best interests to terminate her parental rights because at visits, he always asked when he was coming home. Respondent always took him to the doctor. She was running her husband's business and "going to school for cyber security."

¶ 24 The guardian *ad litem* recommended that both parents' rights be terminated. The circuit court found that the child's best interests required terminating respondent's parental rights. Respondent timely appealed.

¶ 25 While this case was pending, respondent filed numerous actions in the federal district court seeking monetary damages from various parties involved in the case, including the DCFS investigators, the caseworkers, and the foster mother. All but one count in one case were summarily dismissed.

¶ 26                                          ANALYSIS

¶ 27 Respondent's appointed appellate counsel concludes that there is no issue that could support an appeal. We agree.

¶ 28 A proceeding to terminate parental rights occurs in two stages. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). First, the State must prove, by clear and convincing evidence, that the parent is "unfit to have a child" as defined under one or more of the grounds in the Adoption Act. 750 ILCS 50/1(D) (West 2022); *In re D.T.*, 212 Ill. 2d 347, 352 (2004). Each statutory ground is independent so that if the State proves even one, we may affirm the circuit court's finding. *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007).

¶ 29 Here, the circuit court found that respondent made neither reasonable efforts nor reasonable progress toward the goal of returning the child home. Reasonable efforts and reasonable progress

7

are separate and distinct grounds for finding a parent unfit. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1066 (2006). Reasonable efforts are judged by a subjective standard based upon the amount of effort that is reasonable for a particular person. *In re Jacorey S.*, 2012 IL App (1st) 113427, ¶ 21. By contrast, reasonable progress is judged objectively based upon the progress measured from the conditions existing at the time of removal. *In re Daphnie E.*, 368 Ill. App. 3d at 1066. At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification. *Id.* The benchmark for measuring a parent's progress encompasses the parent's compliance with the service plans and the circuit court's directives in light of the condition that gave rise to the removal of the child and other conditions which later become known and would prevent the circuit court from returning custody of the child to the parent. *Id.* (citing *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001)). Reasonable progress exists when the trial court can conclude that it will be able to order the child returned to parental custody in the near future. *In re Daphnie E.*, 368 Ill. App. 3d at 1066.

¶ 30    In this matter, we find that the evidence supported the circuit court's findings on both grounds. Both caseworkers testified in detail about respondent's failure to complete the service plan tasks. She never obtained an integrated assessment or a substance abuse assessment. She underwent a mental health assessment but, despite recommendations of continuing treatment, attended only one session before being dismissed for lack of participation. Neither caseworker was able to verify that respondent had stable, appropriate housing. The initial caseworker opined that respondent was unfit. The current caseworker testified that respondent was in much the same place as when the case started, and that it was also her opinion that respondent was unfit.

¶ 31    Respondent, by contrast, offered general denials and vague, sometimes self-contradictory, assertions of compliance. She testified that she had been at the same residence since 2021, but

8

acknowledged that there had been "occasional times of staying in hotels." She acknowledged that she was initially "hardheaded" about cooperating with the agency and conceded that she had never completed the required counseling. Thus, the evidence, including to some extent respondent's own testimony, supported the circuit court's findings.

¶ 32    The evidence also supported the circuit court's finding that terminating respondent's parental rights was in the child's best interests. Once a parent is found unfit, the circuit court moves on to the second stage of the termination proceedings, in which the circuit court decides whether it is in the minor's best interests to terminate parental rights. On review, this court does not disturb that decision unless it was against the manifest weight of the evidence. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the decision appears to be unreasonable, arbitrary, or not based on the evidence. *In re Tyianna J.*, 2017 IL App (1st) 162306, ¶ 97.

¶ 33    Here, the evidence showed that the child was placed with his stepfather's mother. The child was bonded with his foster family and appeared happy and comfortable in this setting. The foster mother had signed a permanency commitment.

¶ 34    In her response, respondent raises broad conclusory allegations that her personal rights were violated. However, these allegations are not sufficiently specific to allow us to decide whether they have even potential merit. Moreover, most are not supported by citations to the record.

¶ 35    Respondent first contends that her due process rights were violated where she was not notified of key hearings and was denied the right to present evidence. She does not, however, provide any specific instances of hearings of which she was not notified or in which she was not allowed to present evidence. Moreover, she has failed to cite any portion of the record in support of these contentions. In fact, the record on appeal belies respondent's contention. The record on

9

appeal is clear that respondent was present during some court hearings while failing to appear at others. Further, respondent proceeded *pro se* and filed numerous pleadings throughout the pendency of the proceedings.

¶ 36 Undoubtedly, parents are entitled to due process in termination of parental rights proceedings. *In re J.C.*, 2019 IL App (1st) 182226, ¶ 46. Nevertheless, the paramount consideration in such proceedings is the child's best interests. *Id.* ¶ 38.

¶ 37 An appellant must present a sufficiently complete record of the circuit court proceedings to support a claimed error, and in the absence of such a record, we presume that the circuit court's orders conformed with law and had a sufficient factual basis. Any doubts arising from the incompleteness of the record will be resolved against the appellant. *In re K.S.*, 317 Ill. App. 3d 830, 832 (2000) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)).

¶ 38 The record on appeal does not contain transcripts or suitable substitutes for any hearings prior to the termination hearing. While respondent may not be responsible for the failure to transcribe the proceedings, in the absence of support in the record, we must presume that the circuit court acted properly. Respondent appeared at the termination and best-interests hearings, which resulted in the order appealed, and was allowed to present evidence.

¶ 39 Respondent next contends that the initial allegations of neglect were not "substantiated." She argues that those allegations "were based on a single, unsubstantiated report that lacked substantial evidence. The safety assessment conducted did not identify any valid safety threats, thus failing to meet the standard of clear and convincing evidence required for such a drastic measure as terminating parental rights."

¶ 40 Following a hearing, no transcript of which appears in the record, the court found probable cause to believe that the child was neglected and, accordingly, awarded temporary custody to

10

DCFS. Without knowing what evidence the circuit court considered, we cannot meaningfully review these findings. Moreover, respondent's parental rights were not terminated based on the initial report, but on her subsequent failure to comply with service plan directives, which included mental health and substance abuse treatment and obtaining suitable housing.

¶ 41 Respondent next contends that allowing appellate counsel to withdraw will violate her sixth amendment right to counsel. The *Anders* procedure strikes the proper balance between a party's right to counsel and the attorney's ethical duties to the court and, thus, moving to withdraw under *Anders* does not *per se* violate the client's right to counsel. See generally *In re Zy. D.*, 2021 IL App (2d) 200629, ¶ 11. In any event, respondent does not identify with specificity any reasonably meritorious issue that counsel could have raised.

¶ 42 Respondent's next contention is that the termination of her parental rights did not fully consider the minor's best interests. She contends that she has "consistently complied with all court-ordered services and demonstrated significant improvements." We have already found that the circuit court's findings to the contrary were supported by the evidence. Appellate counsel properly recognized that it is not our function to reweigh the evidence. See *In re S.M.*, 314 Ill. App. 3d 682, 687 (2000).

¶ 43 Respondent's final contention is that "[s]ince the termination, new evidence has emerged, including testimonies from professionals who can attest to" respondent's "parenting capabilities." She argues that the assistance of appellate counsel is "essential to properly investigate and present this new evidence."

¶ 44 Appellate counsel was appointed to assist respondent with this appeal, on which we are limited to considering evidence that was actually before the circuit court. See *People v. Heaton*, 266 Ill. App. 3d 469, 478 (1994) (this court may not consider evidence which was not before the

11

trial court and is not contained in the record on appeal). Appellate counsel's function is not to assist the client with an investigation to uncover new evidence to be presented in some hypothetical future proceeding.

¶ 45    The circuit court's finding that respondent was unfit was based on her failure to make reasonable efforts or reasonable progress prior to September 25, 2024, when the termination petition was filed. Evidence of respondent's activities, or opinions about her parenting abilities after that time, would not be relevant to that issue.

¶ 46                                CONCLUSION

¶ 47    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 48    Motion granted; judgment affirmed.