2025 IL App (2d) 240760-U
No. 2-24-0760
Order filed July 10, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* B.M., M.M., Z.M., and A.M., Minors | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| | ) | |
| | ) | Nos. 22-JA-78 |
| | ) | 22-JA-79 |
| | ) | 22-JA-80 |
| | ) | 22-JA-81 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. Brittany H., | ) | Mary H. Nader, |
| Respondent-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  After careful review of the record, we agree with respondent's appellate counsel that respondent's appeal presents no issue of arguable merit on whether respondent was unfit and whether termination of her parental rights was in the minor children's best interests. Therefore, we grant counsel's motion to withdraw and affirm the circuit court's judgment terminating respondent's parental rights. Affirmed.

¶ 2    Respondent Brittany H. appeals from the termination of her parental rights to B.M., M.M., Z.M., and A.M. (the minor children). Her appellate counsel moved to withdraw, alleging that this appeal presents no reasonable or non-frivolous arguments. For the following reasons, we grant the motion to withdraw and affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 28, 2022, the Department of Children and Family Services (DCFS) took the minor children into protective custody after respondent left them alone for 20 to 30 minutes in a locked, running car without air conditioning while she visited Betsy's Slots, a gambling establishment. At the time, the minor children were between one and five years old.

¶ 5      The State filed a petition for adjudication of wardship on August 31, 2022. The petition alleged that, when officers arrived at the scene, respondent was inside the gambling establishment and B.M. was "crying profusely" when officers entered the vehicle. Respondent reported that "she needed to take a break," and the petition alleged she had a history of leaving them unsupervised. Respondent had previously been indicated for cuts, bruises, welts, and abrasions (September 2019); medical neglect (September 2019); inadequate supervision (May 2021); and burns by neglect (June 2022). Both respondent and the minor children's father, Kyle M., had been indicated for substantial risk of physical injury and an environment injurious to health and welfare by "Neglect and Tying/Close Confinement" (June 2019).

¶ 6      Upon information and belief, the petition alleged that respondent was arrested on August 28, 2022, for child endangerment and possession of drug paraphernalia and that she had a history of leaving the minor children without adequate supervision. The petition alleged that the minor children were neglected due to an environment injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2022)) and for being under the age of 14 without supervision for an unreasonable period of time (*id.* § 2-3(1)(d)), and that they were abused due to a substantial risk of physical injury other than by accidental means (*id.* § 2-3(2)(ii)).

¶ 7      Per the status hearing court report filed November 11, 2022, respondent was currently living in a hotel, and she had weekly supervised visits with the minor children. She had been

referred to parenting classes, mental health services, and substance abuse services. She had positive tests for benzodiazepines and oxycodone on September 9, 2022, and October 18, 2022, and she self-reported taking Xanax and Norco; neither were currently prescribed. Respondent had a separate DCFS case for her nine-year-old daughter where she did not participate in visitation or reunification services and signed general surrenders regarding her daughter on November 3, 2022.

¶ 8    On November 17, 2022, the four minor children in this case were adjudicated neglected based on an environment injurious to their welfare and being unsupervised for an unreasonable period of time while under 14 years of age. Respondent stipulated to both bases of neglect. Respondent stipulated specifically to allegations that she left the children alone in the car without air conditioning on August 28 while she visited a gambling establishment and that officers recovered drug paraphernalia from the vehicle that tested positive for the presumptive presence of cocaine.

¶ 9    A December 6, 2022, disposition hearing court report filed by the Allendale Foster Care Program (Allendale) recommended that Brittany complete parent education classes and coaching, participate in individual counseling and family therapy, receive a substance abuse assessment and follow any recommended services, obtain appropriate housing and maintain an income, attend all court dates, and cooperate with the service plan and visitation schedule.

¶ 10    The December 13, 2022, family service plan provided that respondent's instant case was opened due to neglect, substance use, domestic violence, and inadequate supervision. Respondent reported having borderline personality disorder, bipolar disorder, anxiety, insomnia, mood swings, and PTSD. She was currently staying with a friend, was unemployed, and did not have a vehicle. She wanted to engage with mental health and parenting services, and she had weekly visitation with the minor children. Her recommended plan included attending all court hearings and meetings

regarding this case and cooperating with court orders for services. Her recommended services included participation in parenting classes, therapy and counseling, and a substance abuse assessment, after which she was to follow recommended substance abuse services. Subsequent service plans reiterated the recommended services.

¶ 11 The trial court entered the dispositional order on January 19, 2023. Therein, the trial court made the minor children wards of the court and set a goal of return home within 12 months. The order stated that respondent needed to comply with the service plan, including by utilizing protective daycare, ensuring that the minor children's medical needs are met and that they are properly supervised, participating in parenting education and substance abuse treatment, and attending individual counseling.

¶ 12 Per the status hearing court report filed by Allendale on September 18, 2023, respondent had been unsuccessfully discharged from parenting classes at the YWCA, first in March and again in July, because she had missed several appointments. She had not yet reengaged with parenting services as of the report. Respondent also reported that she was unsuccessfully discharged from substance abuse services at Rosecrance and, although she planned to restart services there, she had not yet provided a date to begin services again.

¶ 13 The June 2, 2023, permanency order provided that the goal remained return home within 12 months. It found that respondent had not made reasonable progress nor reasonable efforts toward the minor children's return home.

¶ 14 Respondent did not attend the December 1, 2023, permanency hearing, and the trial court found her in default for failing to appear. In the December 1 permanency order, the trial court again found respondent had made neither reasonable progress nor efforts toward the return home of the minor children. The permanency goal was changed to guardianship. Respondent moved to

vacate the default, and the trial court vacated the default on December 22, 2023. In vacating the default, it also ordered that she be present at hearings with evidence and testimony.

¶ 15    The March 4, 2024, status hearing court report, provided that respondent had failed to respond to the case worker throughout October 2023. When respondent responded in November 2023, the worker sent her consent forms to reengage in parenting and substance abuse services, but respondent did not return them. Respondent's therapist had also reached out to the case worker because they had been unable to contact respondent. The therapist told the case worker that their contact had been sporadic and that if respondent missed another session, she would be discharged.

¶ 16    The March 21, 2024, family service plan stated that respondent had made unsatisfactory progress in various ways, including participation in substance abuse services (with missed drops), counseling and therapy sessions, and parenting classes, as well as cooperating with the agency and attending court hearings.

¶ 17    The permanency hearing court report from Allendale filed May 10, 2024, stated that the permanency goal was no longer reunification, so the agency was no longer monitoring respondent's participation in services. As of the date of the report, respondent had not provided certification that she had completed substance abuse services, nor had she provided information regarding her housing or income. Her last parent-child visit was on September 12, 2023.

¶ 18    The July 3, 2024, continued permanency hearing court report provided that respondent reported having completed substance abuse services but that she had not provided verification of services.

¶ 19    The July 19, 2024, permanency order found that respondent had not made reasonable efforts nor progress toward the minor children's return home. The court found that she was not

participating in services nor cooperating with the agency. The goal was changed to substitute care pending a determination of parental rights.

¶ 20                                    A. Petition to Terminate Parental Rights

¶ 21    On July 23, 2024, the State petitioned to terminate respondent's parental rights. It alleged that respondent had failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the minor children (750 ILCS 50/1(D)(b) (West 2022)); failed to make reasonable efforts to correct the conditions that were the basis for the minor children's removal during any nine-month period following the adjudication of neglect (*id.* § 1(D)(m)(i)); failed to make reasonable progress toward the return home of the minor children during any nine-month period following the adjudication of neglect (*id.* § 1(D)(m)(ii)); and demonstrated an addiction to drugs, other than those prescribed by a physician, for at least one year prior to the filing of the petition (*id.* § 1(D)(k)). The petition listed the relevant time period for both reasonable efforts and progress as November 17, 2022, to July 19, 2024.

¶ 22    Following the petition, the October 30, 2024, permanency hearing court report filed by Allendale provided that respondent had no contact with the agency between March 8, 2024, and July 1, 2024, and again between July 2, 2024, and October 10, 2024. She still had not provided verification of her claim that she had completed substance abuse services.

¶ 23    The November 15, 2024, permanency order noted that respondent still had not had contact with the minor children since September 2023.

¶ 24                                    B. Termination Hearing

¶ 25    The trial court heard the petition to terminate parental rights over the course of three days: December 2, 9, and 10, 2024. December 2 was the fitness portion of the hearing, and respondent was not present. Her counsel informed the trial court that he had advised respondent of the

termination hearing date at the last hearing and via emails, including one sent in October and a same-day reminder. He had not received any response from respondent.

¶ 26    At the fitness hearing, the State called Erin Berry, who testified as follows. She was a foster care manager at Allendale. Before becoming the foster care manager, she was a case manager, where she was one of the workers assigned to the minor children's case, managing it from August 2022 to November 2022 and again from April 2024 to October 2024. Berry identified several State exhibits, including integrated assessments, family service plans, and court reports, which were admitted into evidence.

¶ 27    Berry continued that respondent's services required that she cooperate with the agency and participate in mental health services, substance abuse services, and parenting services. Respondent had not completed parenting classes, individual mental health treatment, individual therapy, nor substance abuse treatment. She submitted to drug screens "[s]ometimes." Although respondent had kept in touch with the agency in the early stages of the case (from August 2022 to November 2022), her contact with the agency since April 2024 had been "very little," such as a brief e-mail exchange in July initiated by Berry.

¶ 28    Respondent's last visitation with the children was in September 2023. She had not reached out to the agency since to inquire about the minor children. At the start of the case, she had a reliable vehicle, and the agency provided her with gas cards. Once her car began having trouble, she was unreceptive to alternative transportation options. Berry asked her what she needed to attend visits with the minor children, and respondent was unable to give an answer.

¶ 29    The trial court found respondent an unfit person on all four alleged grounds, explaining as follows. Regarding a reasonable degree of interest, concern, or responsibility, the court first remarked that "She's not here today." Furthermore, it stated that respondent had lost all contact

with the agency and had not seen the minor children since September 2023. Relying on the reports in evidence, it also found that respondent had failed to make reasonable efforts and progress, and based on the lab reports, it found she had an addiction to drugs other than those prescribed by a physician.

¶ 30    The best interests hearing commenced on December 9, 2024. Again, respondent was not present. Her counsel informed the trial court that he had notified respondent several times of the hearing, including via e-mail.

¶ 31    The State called Berry again, and she testified that she had observed the minor children in their foster placements,[1] and the children appeared comfortable and sought out the foster parents for affection. The foster families were providing consistent and steady care, and the children's needs were being met. The foster parents had signed permanency commitments for the minor children. Berry opined that it was in the minor children's best interests that respondent's parental rights be terminated and that the minor children be free for adoption by their respective foster parents.

¶ 32    Milleysha Martinez was a case worker at Allendale, and she had been assigned to respondent's family since October 2024. She was shadowing Berry. She testified that she had observed the minor children with their foster families. She made similar observations as Berry about the nature of the minor children's relationships with their foster families, and she opined that it was in the minor children's best interests that respondent's parental rights be terminated.

---

[1]B.M. and M.M. were together with one foster family, and Z.M. and A.M. were together with another family.

¶ 33    Carrie Weyers, the court appointed special advocate (CASA), testified that she had visited the minor children twice a month at their foster homes. She had watched the minor children grow over the last two years, and they had advanced developmentally since first entering foster care. The children's needs were being met. It was Weyers's opinion that the minor children should remain with their foster families.

¶ 34    Each of the minor children's foster parents also testified. In summary, the four foster parents documented the minor children's positive developmental progress since coming into their care, were close with the children, and were committed to raising them as their own. They would adopt the minor children if given the opportunity. The two foster families also had a helpful relationship with each other, with one family watching the minor children while the other dealt with the illness and death of a family member. At least one parent specifically testified to a commitment to continuing sibling visits between the families.

¶ 35    The hearing was continued to December 10, and once again, respondent was not present. Her counsel stated that, following the conclusion of yesterday's proceedings, he had advised her that proceedings were continued to the 10th at 1:30 p.m.

¶ 36    Respondent did not call any witnesses at the best interests stage of the termination hearing. The father called two witnesses, including William Petsche, an attorney who had been appointed as guardian *ad litem* to this case but no longer was as of August 2024. He expressed his concerns about the foster families, including that they were limiting visitation between siblings and with the father and that they talked negatively about the minor children's biological parents.

¶ 37    At the conclusion of the hearing, the trial court found that the State had proved that it was in the minor children's best interest to terminate respondent's parental rights. Addressing respondent, the court commented that "Mom is MIA. We don't know where she is. *** I don't

think that she's in any way, shape, or form involved, invested, cares, any of that." It found that the minor children were loved and cared for in their foster homes. Their emotional needs were being met, as were their medical and dental needs. They had "become little people while they are in foster care," and they were attached to their foster families. "They feel loved. They have a sense of being valued. They have a sense of security[.]" The minor children had community ties and permanency in their foster homes, and the foster parents were doing the best they could. The court continued that the minor children were too young to articulate their wishes, but it thought their positive behavior with their foster families demonstrated their wishes.

¶ 38    This timely appeal followed, and the trial court appointed appellate counsel for respondent. Several months thereafter, counsel moved for leave to withdraw as respondent's counsel, the appellate court sent notice to respondent that the matter was continued for 30 days to allow her to file a response, and respondent did not respond. Given the delay and truncated timeline resulting from the motion to withdraw, we find good cause to issue this disposition past the 150-day deadline (Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018)).

¶ 39                                    II. ANALYSIS

¶ 40    Appellate counsel for respondent moves to withdraw as her counsel, asserting that this appeal presents no issue of arguable merit. Withdrawal in appeals from the termination of parental rights is governed by the procedure set forth in *Anders v. California*, 386 U.S. 738 (1967). See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 4; see also *In re Zy. D.*, 2021 IL App (2d) 200629, ¶¶ 10-12. An *Anders* brief must set out any irregularities in the trial process or other potential error that might be meritorious, and this court must be provided with transcripts of the fitness and best interests hearings to review whether the appeal lacks merit. *In re Zy. D.*, 2021 IL App (2d) 200629, ¶ 10. Counsel has done so here, and we were able to review the transcripts.

¶ 41 Specifically, appellate counsel contends that there is no non-frivolous argument (1) that respondent was an unfit person and (2) that termination was in the minor children's best interests. Therefore, counsel concludes that this appeal from the termination of respondent's parental rights lacks merit.

¶ 42 The Juvenile Court Act of 1987 provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2020); *In re Tiffany M.*, 353 Ill. App. 3d 883, 889 (2004). The first stage requires that the State prove by clear and convincing evidence that the parent is an "unfit person" under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)) lists various grounds to find a parent unfit, any of which alone will support a finding of unfitness. *In re Tiffany M.*, 353 Ill. App. 3d at 889. Therefore, we may affirm the trial court's finding where the evidence supports any one of the alleged grounds of unfitness. See *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 20 ("The court need find a parent unfit under only one of the grounds" in section 1(D) of the Adoption Act to proceed to a best-interest hearing).

¶ 43 If the court finds the parent unfit, the court moves to the best-interest stage of the proceeding. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). In the best interest stage, the focus of the proceeding shifts to the child: Whether, in light of the child's needs, the parental rights should be terminated. *In re Tr. A.*, 2020 IL App. (2d) 200225, ¶ 56. The State's burden of proof at the best-interest stage is a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 366 (2004).

¶ 44 To reverse a trial court's finding that there was clear and convincing evidence of parental unfitness, a reviewing court must determine that the trial court's finding was against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the decision is

unreasonable, arbitrary, or not based on the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶ 30. Likewise, we review a trial court's best interests finding under the manifest-weight-of-the-evidence standard. *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 74.

¶ 45                                  A. Fitness Finding

¶ 46    Counsel first argues that no issue of arguable merit exists as to the trial court's finding of respondent's unfitness. Counsel identifies several potential arguments that ultimately lack merit: the trial court erroneously assumed that respondent was addicted to non-prescription drugs when the evidence did not show whether she had used drugs since March 2023; and, under the subjective standards of making reasonable efforts and demonstrating reasonable concern, interest, or responsibility, respondent behaved reasonably given her circumstances, such as her eventual car troubles.

¶ 47    A parent may be found unfit for failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. 750 ILCS 50/1(D)(b) (West 2022). In assessing this ground of unfitness, a court considers the parent's efforts to visit and maintain contact with the child, among other things such as inquiries into the child's welfare. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. The parent's circumstances are relevant to the court's analysis. *In re M.I. V. J.B.*, 2016 IL 120232, ¶ 27; *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31 (identifying relevant circumstances including difficulty obtaining transportation and poverty). "Even extreme circumstances that impede the parent's ability to develop a relationship with the child do not excuse a complete lack of communication or interest in the child." *In re A.S.B.*, 293 Ill. App. 3d 836, 843-44 (1997).

¶ 48    Whether a parent made reasonable efforts (750 ILCS 50/1(D)(m)(i) (West 2022)) is likewise a subjective standard related to the goal of correcting the conditions that caused the child's

removal from the parent's custody. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). That is, the reasonable efforts inquiry focuses on the effort of a particular parent that would be reasonable for that parent under the circumstances of the case, and it narrowly considers only the correction of those conditions originally providing a basis for the child's removal. *In re D.P.*, 2024 IL App (1st) 231530, ¶ 42.

¶ 49    In contrast, reasonable progress (750 ILCS 50/1(D)(m)(ii) (West 2022)) is an objective standard, reviewing the steps the parent has taken toward the goal of reunification. *In re Dar. H.*, 2023 IL App (4th) 230509, ¶ 53. Reasonable progress exists when the trial court can conclude that it will be able to return the child to parental custody in the near future. *Id.* The benchmark of reasonable progress is compliance with the service plans and court directives in light of both the conditions that gave rise to the child's removal and other conditions that later became known and would prevent the court from returning the child to the parent's custody. *In re Z.M.* 2019 IL App (3d) 180424, ¶ 68 (citing *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001)). In assessing reasonable progress, the trial court considers evidence occurring only during the relevant nine-month period. *Id.*

¶ 50    We agree with appellate counsel that this appeal presents no issue of arguable merit regarding respondent's parental fitness. The evidence shows that respondent has not visited the children since September 2023, and although she claimed vehicle trouble, Berry testified that she was offered various transportation alternatives, which respondent declined. Furthermore, respondent was not present for any part of the termination hearing, in violation of the trial court's order to attend any hearings with evidence or testimony. The father, Kyle, attended hearings despite being incarcerated, utilizing Zoom when he could not physically attend. Respondent simply did not show up, in person or via teleconference, despite her counsel keeping her apprised

of all proceedings. Respondent also failed to comply with the service plans: she did not cooperate with the agency and by and large fell out of contact with the agency; and she did not complete parenting classes, substance abuse services, mental health treatment, or therapy. Given these facts, there is no arguable basis to say the trial court's finding of unfitness on three of the bases (reasonable efforts, reasonable progress, and a reasonable degree of interest, concern, or responsibility) were against the manifest weight of the evidence. Having found three reasonable bases of unfitness, we have no need to also consider the fourth (addiction to drugs (750 ILCS 50/1(D)(k) (West 2022))).

¶ 51                                    B. Best Interests

¶ 52    Counsel also contends that this appeal presents no meritorious issue regarding the trial court's finding of the minor children's best interests. Counsel contends that, although the minor children are split between two foster placements, court reports indicated frequent sibling visits, and the children were seeing their father.

¶ 53    "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interests in a stable, loving home life." *In re D.T.*, 212 Ill. 2d at 364. In determining the minor children's best interests, the trial court must consider the following factors: (1) their physical safety and welfare; (2) the development of their identity; (3) their background and ties; (4) their sense of attachments, including where they feel loved, valued, and secure; (5) their wishes and long-term goals; (6) their need for permanence; (7) the uniqueness of every family and the children; (8) the risks attendant to substitute care; and (9) the preferences of the persons available to care for the children. 705 ILCS 405/1-3(4.05) (West 2022). The trial court may also consider the nature and length of the minor children's relationship with their current caretakers and the effect a change would have on their emotional and psychological well-being. *In*

*re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 27. The trial court need not explicitly reference each factor. *Id.*

¶ 54　Here, we agree with appellate counsel that the trial court's best-interests findings were not against the manifest weight of the evidence. Both Berry and Martinez opined that it was in the minor children's best interests to terminate parental rights, testifying that, based on their observations, the minor children were comfortable with their foster families, and the foster families were providing consistent care and were meeting the minor children's needs. The foster families were committed to providing the minor children with permanency. Likewise, the CASA had visited with the minor children at their placements and testified that they had grown developmentally since entering care and were having their needs met.

¶ 55　The foster parents all testified that they were close with the minor children and were committed to raising the children as their own. They would adopt if given the opportunity. The two foster families also had a positive relationship with each other.

¶ 56　The trial court considered the best interests factors, and its findings—that the minor children had "become little people" while in care; that they felt loved, attached, secure, and valued; and that they had community ties and permanency in their foster homes—were based on the evidence presented at the hearings, both the live testimony and the exhibits admitted into evidence. Accordingly, we find this appeal presents no issue of arguable merit regarding the trial court's best-interests findings.

¶ 57　　　　　　　　　　　　　III. CONCLUSION

¶ 58　After examining the record, the motion to withdraw, and the accompanying memorandum, we agree with appellate counsel that this appeal presents no issue of arguable merit. Therefore, we grant the motion to withdraw and affirm the judgment of the circuit court of McHenry County.

¶ 59    Affirmed.